[Cite as *State v. Garnett*, 2013-Ohio-4971.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

STATE OF OHIO

      Appellee

      v.

DUSTIN J. GARNETT

      Appellant

C.A. No.     12CA0088-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.    12CR0355

DECISION AND JOURNAL ENTRY

Dated: November 12, 2013

HENSAL, Judge.

{¶1}   Dustin Garnett appeals his conviction from the Medina County Court of Common Pleas for trafficking in drugs. For the following reasons, this Court affirms.

I.

{¶2}   In November 2011, a Medina County drug task force agent made a controlled drug buy from Mr. Garnett in the parking lot of a pharmacy. The agent bought a total of 49 pills that were identical in shape, size, and color. Each pill also had the designation "K-56" stamped into it. Shervonne Bufford, a forensic scientist with the Bureau of Criminal Identification and Investigation, testified that the pills were pharmaceutical grade, meaning that they had been made by a reputable pharmaceutical manufacture. She consulted a reference database called "Ident-A-Drug" to determine the content of the pills. According to the database, the pills contain 10 milligrams of oxycodone. Ms. Bufford took scrapings from one of the pills and analyzed

them in a gas chromatograph mass spectrometer. The test confirmed that the pill contained oxycodone.

{¶3} The Grand Jury indicted Mr. Garnett for trafficking in drugs. Because of the strength and number of the pills, the indictment charged him with selling "an amount equal or exceeding bulk but less than five times bulk." A jury found Mr. Garnett guilty of the offense, and the trial court sentenced him to two years in prison. Mr. Garnett has appealed, assigning as error that his conviction is not supported by sufficient evidence and is against the manifest weight of the evidence.

II.

ASSIGNMENT OF ERROR

APPELLANT'S CONVICTION WAS BASED UPON INSUFFICIENT EVIDENCE AND [IS] AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶4} Mr. Garnett argues that the tests that the State conducted were insufficient to prove that he trafficked in excess of the bulk amount of oxycodone. He also argues that his conviction is against the manifest weight of the evidence. Whether a conviction is supported by sufficient evidence is a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In making this determination, we must view the evidence in the light most favorable to the prosecution:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. If a defendant asserts that his convictions are against the manifest weight of the evidence:

> [A]n appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

{¶5} The jury found Mr. Garnett guilty of trafficking in oxycodone, in violation of Section 2925.03(A)(1) of the Ohio Revised Code. Under that section, "[n]o person shall knowingly * * * [s]ell or offer to sell a controlled substance * * *." The jury also found that the "amount of the drug involved equals or exceeds the bulk amount but is less than five times the bulk amount * * *." R.C. 2925.03(C)(1)(c). For oxycodone, the bulk amount is "[a]n amount equal to or exceeding twenty grams or five times the maximum daily dose * * * specified in a standard pharmaceutical reference manual * * *." R.C. 2925.01(D)(1)(d). A standard pharmaceutical manual means "the current edition * * * of references that are approved by the state board of pharmacy." R.C. 2925.01(M). In order to prove that the quantity of drugs exceeded the bulk amount in this case, the State did not attempt to establish that they weighed in excess of twenty grams. Instead, it focused on whether the number of pills exceeded five times the maximum daily dose. It relied on a standard pharmaceutical manual that indicated that five times the maximum daily dose for 10 milligram oxycodone tablets is 45 pills.

{¶6} Mr. Garnett argues that the State failed to prove that at least 45 out of the 49 pills contained oxycodone. He asserts that, although the State did not have to test every pill, it needed to test a larger sample size in order for the jury to reasonably infer that all of the pills contained oxycodone. Mr. Garnett argues that it is not enough that all of the pills were similar in shape,

size, color, and marking. He also argues that the State failed to prove that the pills contained 10 milligrams of oxycodone. He notes that Ms. Bufford admitted that she did not test the milligram composition of any of the pills. Ms. Bufford explained that she had relied, instead, on the Ident-A-Drug database.

{¶7} Regarding whether the pills contained oxycodone, "[t]his Court has previously held that a scientific analysis of a random sampling of pills from a bulk quantity is sufficient to support an inference that all of the pills contain the same drug, if the defendant offers no rebuttal." *State v. Mathis*, 9th Dist. Summit No. 23507, 2007-Ohio-2345, ¶ 12, citing *State v. Rush*, 9th Dist. Lorain Nos. 3809 & 3818, 1985 WL 11030, *4 (July 31, 1985). We have never set requirements on the percentage of a substance that must be analyzed to support such an inference, as it depends on the facts and circumstances of each case. In this case, where the seized pills were bundled together, were uniform in color, shape, size, and marking, and were of "pharmaceutical grade," we conclude that the random selection and sampling of only one of the pills was sufficient to support an inference that all of the pills contained oxycodone. *See State v. Hensley*, 2d Dist. Montgomery No. 8518, 1985 WL 7883, *6 (Apr. 2, 1985) (allowing inference even though forensic chemist tested only one out of 100 identically-marked pills). Further, as noted by Judge Grey, judges are generally "woefully ignorant of sampling techniques * * * [so] if [an] appellant wishes to object to the evidence on the grounds that it is not random or representative, it is incumbent upon him to introduce by expert witness or otherwise sufficient evidence to show the unreliability of the testing." *State v. Reynolds*, 4th Dist. Ross No. 1185, 1985 WL 8354, *2 (Sept. 26, 1985) (Grey, J., concurring).

{¶8} Regarding the amount of oxycodone contained in each pill, Ms. Bufford testified that, based on the pills' shape, size, color, and markings, she "consult[ed] a database that is

specifically for pharmacists, law enforcement officers * * * [and] professionals. It's called the Ident-A-Drug reference." She testified that, according to the database, the pills that the undercover agent purchased from Mr. Garnett contain 10 milligrams of oxycodone each. She also testified that, if the pills contained only five milligrams of oxycodone, they would look different. Mr. Garnett did not object to Ms. Bufford's reliance on the reference database or challenge the accuracy of the database at trial. We, therefore, conclude that Ms. Bufford's testimony was sufficient to establish that each of the 49 pills contained 10 milligrams of oxycodone.

{¶9} Viewing the record in a light most favorable to the State, there was sufficient evidence to establish beyond a reasonable doubt that Mr. Garnett sold oxycodone to the undercover agent in an amount that was in excess of the bulk amount. To the extent that Mr. Garnett's assignment of error challenges the sufficiency of the evidence, it is overruled.

{¶10} Regarding manifest weight, Mr. Garnett argues that, in light of the minimal testing of the pills, the jury lost its way when it found that at least 45 of the pills contained 10 milligrams of oxycodone. We disagree. As we have often noted, unlike this Court, the jury had the opportunity to observe Ms. Bufford first hand and assess her credibility regarding her credentials, her testing methods, and the appropriateness of her reliance on the Ident-A-Drug database. *See State v. Howse*, 9th Dist. Lorain No. 12CA010251, 2012-Ohio-6106, ¶ 45 ("[T]he jury was entitled to believe all, part, or none of the testimony of each witness."). We cannot say that its decision resulted in a manifest miscarriage of justice. Accordingly, to the extent that Mr. Garnett's assignment of error challenges the weight of the evidence, it is overruled.

III.

{¶11} Mr. Garnett's conviction was supported by sufficient evidence and is not against the manifest weight of the evidence. His assignment of error is overruled. The judgment of the Medina County common pleas court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

WHITMORE, J.
CONCURS.

BELFANCE, P. J.
CONCURRING.

{¶12}  I concur.  However, I write separately to clarify the reason that the testing in this case was sufficient to demonstrate that Mr. Garnett possessed a bulk amount of oxycodone.

{¶13}  At trial and in this appeal, Mr. Garnett has raised the issue of the sufficiency of the evidence where the state has relied upon random sampling to prove both the nature of the substance and its amount.  The Ohio Supreme Court has not directly addressed this issue.  However, other state supreme courts have concluded that "random testing is permissible when the seized samples are sufficiently homogenous so that one may infer beyond a reasonable doubt that the untested samples contain the same substance as those that are conclusively tested.  This rule is based in reason and practicality."  (Internal citation omitted.) *People v. Jones*, 174 Ill.2d 427, 429 (1996).  *See also* Annotation, *Sufficiency of Random Sampling of Drug or Contraband to Establish Jurisdictional Amount Required for Conviction*, 45 A.L.R.5th 1, Section 2[a] (1997) ("As a general rule, courts agree that random sampling of a homogeneous substance is sufficient to establish the jurisdictional amount required for conviction * * *.  The courts which embrace this view, however, commonly qualify it as a rule of reason and practicality which is not without limitation.").[1]

{¶14}  In discussing the reliability of using random sampling, the Sixth Circuit has noted that

> "[C]ourts have endorsed statistically based drug-quantity extrapolations
> predicated on random test samples in circumstances where the government was

[1] Random sampling is often held to be insufficient if the defendant could be convicted of a lesser-included offense involving a smaller quantity.  In such a case, the prosecution must conclusively test enough of the controlled substance to establish the jurisdictional weight prescribed for the more serious offense.  *See, e.g., State v. Robinson*, 517 N.W.2d 336, 339 (Minn.1994); *People v. Williams*, 267 Ill.App.3d 870, 879 (1994); *Ross v. State*, 528 So.2d 1237, 1241 (Fla.App.1988).

able to demonstrate an 'adequate basis in fact for the extrapolation and that the quantity was determined in a manner consistent with the accepted standards of [reasonable] reliability.'"

*United States v. Jackson*, 470 F.3d 299, 310-311 (6th Cir.2006), quoting *United States v. Scalia*,

993 F.2d 984, 989 (1st Cir.1993), quoting *United States v. McCutchen*, 992 F.2d 22, 25-26 (3d

Cir.1993).[2] Sufficient indicia of reliability may be found where the evidence demonstrates that

"(1) a proper 'random' selection procedure was employed; (2) the chemical testing method conformed with an accepted methodology; (3) the tested and untested samples were sufficiently similar in physical appearance; and (4) the tested and untested samples were contemporaneously seized at the search scene."

*Jackson* at 311, quoting *Scalia* at 989. Thus, critical issues with respect to random sampling

pertain to the appropriateness of the random selection procedure and the methodology employed

in testing for the particular substance. In some instances, random sampling to prove both

identity and weight implicates the sufficiency of the evidence, namely, whether the state is able

to meet its burden of proof. *See, e.g, Jones*, 174 Ill.2d at 429-430 (Prosecution failed to meet its

burden of proof where it tested only two of five packets containing loose, rocky substance.).

Conversely, under other circumstances, random sampling may implicate the weight of the

evidence and not sufficiency. *See, e.g., Gabriel v. State*, 900 S.W.2d 721, 722

(Tex.Crim.App.1995). In other words, the evidence in each case must be examined in order to

determine the reasonableness of the type and extent of random sampling employed to determine

whether the state met its burden of proof both as to identity and quantity or weight.

Circumstances include, but are not limited to, the quantity of the substance, its appearance,

whether it was discovered in one single container or package or more than one, the form of the

---

[2] In these cases, random sampling was employed to demonstrate quantities of an illicit substance by a preponderance of the evidence for purposes of sentencing pursuant to statutory guidelines.

substance (pills, powder, crystals, liquid), and packing or lack of it. For example, in *State v. Mathis*, 9th Dist. Summit No. 23507, 2007-Ohio-2345, this Court concluded that the testing done by the State was sufficient to allow a jury to find that 112 bricks seized contained marijuana given that: (1) 1 brick was chemically tested and contained marijuana; (2) the packages were similar in size, shape, and packaging; and (3) there was a great amount of other evidence indicating the presence of marijuana such as a strong odor of marijuana emanating from the defendant's home and officers observed clumps of marijuana on the floor of the home. *Id*. at ¶ 13.[3] *See also State v. Hensley*, 2d Dist. Montgomery No. 8518, 1985 WL 7883, *6 (Apr. 2, 1985), (concluding that testing single pills from individual bags was sufficient when all the pills contained the same imprint, had been discovered in the same car, and the State had tested over 100 pills out of approximately 5000 and found them all to contain the same substance).

{¶15} At trial, Ms. Bufford testified that she examined the pills and determined that they were uniform, i.e. were the same color and size and had the same markings. She then consulted the Ident-A-Drug database so as to make an initial judgment as to what the pills might contain, and, based upon the markings and color of the pills, she determined that the pills should contain ten milligrams of oxycodone. Ms. Bufford indicated that her procedure, after making this initial determination, was that she would then take a "representative sample," meaning "[she] w[ould] take one of the tablets and scrape some of the pill introduced in to a little vial and run that on [her] instrumentation." Ms. Bufford stated that, when the gas chromatograph mass spectrometer is finished running, if the data she has received identifies what has been referenced "then [she] can go ahead and come to a conclusion, and it's only with those two pieces of information, the

---

[3] A challenge to the weight of the bricks on the theory that the packaging was not removed before weighing was rejected given that the state was required to prove possession of 20,000 grams and the bricks weighed 42,380 grams. *Mathis* at ¶ 10.

actual reference [she] consulted before and the actual confirmation on the instrumentation that [she] conduct[s] to come to a conclusion as to what the substance is." Ms. Bufford testified that her analysis indicated the pill in this case consisted solely of oxycodone.

{¶16} Mr. Garnett's counsel elicited testimony from Ms. Bufford concerning hypergeometric sampling. Ms. Bufford explained that hypergeometric sampling provides a mathematical formula that would indicate how many samples of a given set should be tested to ensure that a certain percentage of the set was uniformly the same. She indicated that BCI uses hypergeometric sampling on a case-by-case basis, and suggested it is used where it is unclear what the substance might be. With respect to the pills at issue in this case, Ms. Bufford estimated that, if using hypergeometric sampling, one would have to test approximately 13 or 14 pills to be able to conclude that there was a 95% likelihood that 90% of the remaining pills also contained the same substance.

{¶17} Although it is troubling that Ms. Bufford seemed to indicate that, regardless of the number of pills, she would have only tested one pill as confirmation that all of the pills contained the same substance and same weight, we are not confronted with that scenario. In this case, the agent made a controlled drug buy in the parking lot of a pharmacy. The 49 pills were all uniform in marking, size and shape and were delivered in one single transaction and one single container. Ms. Bufford examined the pills and testified that she consulted the Ident-A-Drug database[4] from which she learned that the imprint on the pills indicated that they contained ten milligrams of oxycodone. She tested one pill and found that it contained oxycodone. Accordingly, given all of

---

[4] Mr. Garnett has not challenged the admission of the evidence from the Ident-A-Drug database on appeal. *See* App.R. 16(A)(7); *State v. Rapp*, 9th Dist. Wayne No. 12CA0062, 2013-Ohio-4408, ¶ 13.

the facts in this case, including the fact that the pills were marked with a pharmaceutical imprint[5] and that the Ident-A-Drug database supplied supporting evidence about the content and weight of the pills, I agree that, under these circumstances, the State presented sufficient evidence that Mr. Garnett possessed more than five times the maximum daily dose of ten-milligram oxycodone tablets.  For similar reasons, Mr. Garnett's conviction is not against the manifest weight of the evidence.

APPEARANCES:

KELLY A. ONEST, Attorney at Law, for Appellant.

DEAN HOLMAN, Prosecuting Attorney, and LAUREN M. HASE, Assistant Prosecuting Attorney, for Appellee.

---

[5] If the imprint was something less official, such as a picture logo like a dog or a rabbit, the outcome of this case would likely be different.