[Cite as *State v. Gedeon*, 2019-Ohio-3348.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | | |
|---|---|---|
| STATE OF OHIO | | C.A. No.     29153 |
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| NICHOLAS M. GEDEON | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No.     CR-2017-02-0564 |

DECISION AND JOURNAL ENTRY

Dated: August 21, 2019

TEODOSIO, Presiding Judge.

{¶1}   Defendant-Appellant, Nicholas Gedeon, appeals from the judgment of the Summit County Court of Common Pleas.  This Court affirms.

I.

{¶2}   Mr. Gedeon was a passenger in a vehicle that the police stopped due to a traffic violation.  The officer who executed the stop and the officer who arrived as backup both detected the odor of marijuana coming from the vehicle.  Additionally, Mr. Gedeon was observed making furtive movements during the stop and nervously glancing at the vehicle's glovebox as he was asked questions about the marijuana odor.  As a result of the odor and their observations, the officers removed the driver and Mr. Gedeon from the vehicle and searched it.  The search uncovered, among other items, a sizeable amount of marijuana in the glove box, a pill bottle containing 119 Oxycodone pills in the space behind the glove box, baggies, and a scale.  Upon searching Mr. Gedeon, the police also found $2,100 in his wallet.  The cash was separated into

two rubber-banded bundles; one containing twenty $100 bills and one containing $100 worth of smaller bills.

{¶3} Following his arrest, Mr. Gedeon was taken to jail and held without bond. He spoke with officers four times before his preliminary hearing and admitted that he had purchased the Oxycodone pills to sell them for profit. He consented to a search of his cell phone, but the police also secured a warrant to search the phone. The cell phone search uncovered numerous text messages related to the purchase and sale of the Oxycodone pills.

{¶4} A grand jury indicted Mr. Gedeon on (1) two counts of aggravated trafficking in Oxycodone, one of which included a bulk amount enhancement and one of which did not; (2) two counts of aggravated possession of Oxycodone, one of which included a bulk amount enhancement and one of which did not; (3) possession of Buprenorphine; (4) possession of marijuana; (5) illegal use or possession of drug paraphernalia; and (6) two criminal forfeiture specifications for the $2,100. Thereafter, a wealth of motion practice ensued. Mr. Gedeon moved to dismiss his charges based on a violation of his speedy trial rights, the fact that he was unable to obtain a verbatim transcript of his preliminary hearing, misconduct that allegedly occurred during the grand jury proceedings, and several other grounds. He also moved to suppress the evidence against him. The primary basis for his motion to suppress was that the police never secured a warrant for his arrest. Mr. Gedeon argued that his unlawful detainment rendered all the evidence against him subject to the exclusionary rule.

{¶5} The trial court held several hearings on Mr. Gedeon's motions. It denied his motions to dismiss and denied, in part, his motion to suppress. The court found that Mr. Gedeon's fourth interrogation occurred during a period of unlawful detainment. As such, it

granted Mr. Gedeon's motion to suppress insofar as it pertained to the admissibility of the fourth interrogation.

{¶6} Mr. Gedeon waived his right to a jury trial, and a bench trial ensued. The trial court found him not guilty of possessing Buprenorphine, but guilty of his remaining counts and specifications. It then sentenced him to a total of two years of community control and ordered the forfeiture of his $2,100.

{¶7} Mr. Gedeon now appeals and raises four assignments of error for our review. For ease of analysis, we rearrange several of his assignments of error.

II.

**ASSIGNMENT OF ERROR ONE**

DENYING DISCHARGE FOR FAILURE TO PROVIDE SPEEDY TRIAL[.] (Sic.)

{¶8} In his first assignment of error, Mr. Gedeon argues that the trial court erred when it refused to dismiss his indictment on the basis of a speedy trial violation. We disagree.

{¶9} "A trial court's determination of speedy trial issues presents a mixed question of law and fact." *State v. Jaeger*, 9th Dist. Medina No. 17CA0072-M, 2018-Ohio-2994, ¶ 5. "When reviewing an appellant's claim that he was denied his right to a speedy trial, this Court applies the de novo standard of review to questions of law and the clearly erroneous standard of review to questions of fact." *State v. Fields*, 9th Dist. Wayne No. 12CA0045, 2013-Ohio-4970, ¶ 8, quoting *State v. Downing*, 9th Dist. Summit No. 22012, 2004-Ohio-5952, ¶ 36. "A de novo review requires an independent review of the trial court's decision without any deference to the trial court's determination." *State v. Consilio*, 9th Dist. Summit No. 22761, 2006-Ohio-649, ¶ 4.

{¶10} A person charged with a felony must be brought to trial within 270 days of his arrest. R.C. 2945.71(C)(2). "Time is calculated to run the day after the date of arrest," *State v.*

*Browand*, 9th Dist. Lorain No. 06CA009053, 2007-Ohio-4342, ¶ 12, and "each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days." R.C. 2945.71(E). An exception to the triple-count provision lies if "the accused is also being held in jail on other charges." *State v. Stephens*, 9th Dist. Summit No. 26516, 2013-Ohio-2223, ¶ 12. "In those instances, 'the 270-day time limit * * * applies.'" *State v. Phillips*, 9th Dist. Summit No. 27661, 2016-Ohio-4687, ¶ 7, quoting *Stephens* at ¶ 12. Nevertheless, time may be tolled due to various tolling events. *See* R.C. 2945.72.

{¶11} Mr. Gedeon was arrested on February 2, 2017, and remained incarcerated until May 16, 2017, when he posted bond. In his motion to dismiss, he argued that each day he spent in jail should be counted as three, *see* R.C. 2945.71, but the trial court rejected his argument. The court found that, between February 10th and April 5th, Mr. Gedeon was subject to a holder in a different case. Mr. Gedeon argues that the trial court erred when it found that he was subject to a holder. According to Mr. Gedeon, the triple-count provision applied to the entirety of his jail stay because the State failed to set forth any record evidence of the holder.

{¶12} Upon review, we need not determine whether the trial court erred when it found that Mr. Gedeon was subject to a holder. That is because, even if the court erred in that regard, Mr. Gedeon's speedy trial rights were not violated. *See* Crim.R. 52(A) (errors that do not affect substantial rights "shall be disregarded").

{¶13} Mr. Gedeon was arrested on February 2, 2017, so his speedy trial time began to run the following day. *See Browand* at ¶ 12. He was incarcerated until May 16, 2017, but requested a two-week continuance on April 6, 2017. Thus, his continuance tolled time, *see* R.C. 2945.72(H), and, at most, 189 days elapsed between February 3, 2017, and April 20, 2017. *See* R.C. 2945.71(E).

{¶14} On April 20, 2017, when Mr. Gedeon's continuance was set to expire, the trial court continued the matter for another three weeks due to pending issues with discovery. Mr. Gedeon indicated that he had no objection to that continuance, and he has not taken issue with its reasonableness on appeal. Accordingly, the second continuance also constituted a tolling event, and time was tolled between April 20, 2017, and May 11, 2017. *See* R.C. 2945.72(H) (including, as a tolling event, "the period of any reasonable continuance granted other than upon the accused's own motion").

{¶15} From May 11, 2017, until May 16, 2017, 15 days elapsed for purposes of Mr. Gedeon's speedy trial calculations, bringing his total calculation to 204 days. *See* R.C. 2945.71(E). Mr. Gedeon posted bond on May 16th, so, at that point, R.C. 2945.71(E)'s triple-count provision ceased to apply to him. Moreover, on May 30, 2017, and June 1, 2017, he filed more than ten pretrial motions. Those motions further tolled his speedy trial time. *See* R.C. 2945.72(E). As such, from May 16, 2017, to May 30, 2017, only 14 days elapsed for purposes of his speedy trial time. Combined with the 204 days that had already elapsed, the total amount of speedy trial time that elapsed was 218 days.

{¶16} The trial court disposed of Mr. Gedeon's speedy trial motion on June 12, 2017, following a hearing on all of his pending motions. Because the delay that occurred between May 30th and June 12th was attributable to Mr. Gedeon having filed numerous motions, that time was chargeable to him. *See, e.g., State v. Burroughs*, 9th Dist. Lorain No. 14CA010595, 2016-Ohio-1139, ¶ 8. Thus, for purposes of his speedy trial calculation, a total of 218 days elapsed between his arrest and the day the court denied his motion to dismiss. Because that number fell far short of R.C. 2945.71(C)(2)'s 270-day time limit, the trial court did not err when it denied his motion to dismiss. *See State v. Calise*, 9th Dist. Summit No. 26027, 2012-Ohio-4797, ¶ 42 ("[T]his

Court may affirm its ultimate decision on other legally correct grounds."). Mr. Gedeon's first assignment of error is overruled.

### ASSIGNMENT OF ERROR THREE

DENYING DISMISSAL FOR FAILURE TO PROVIDE PRELIMINARY HEARING TRANSCRIPT OR ALTERNATIVE AND ABUSE OF PRIVILEGE IN GRAND JURY. (Sic.)

{¶17} In his third assignment of error, Mr. Gedeon argues that the trial court erred when it refused to dismiss his indictment due to (1) the State's failure to provide him with a transcript of his preliminary hearing, and (2) certain misconduct that occurred before the grand jury. We disagree.

{¶18} Prior to his indictment by grand jury, Mr. Gedeon was held on a complaint filed in the Stow Municipal Court. The municipal court conducted a preliminary hearing, during which testimony was taken and Mr. Gedeon was represented by counsel. At the conclusion of the hearing, the case was bound over to grand jury, and Mr. Gedeon was indicted. Though he later sought a transcript from the preliminary hearing, none was available. The Stow Municipal Court informed the parties that unresolved technical difficulties had made it impossible to produce an audible copy of the digital recording from the hearing.

{¶19} Several weeks after learning that the preliminary hearing transcript was unavailable, Mr. Gedeon moved to dismiss his indictment on that basis. He argued that he was entitled to a dismissal because the State knew of the transcript's unavailability, but had allowed weeks to pass without proposing any alternative solution. He claimed that the transcript was critical to his defense because it would allow him to prove that the police lacked probable cause for his arrest and the arresting officer's testimony differed from the written reports. Based on the

unavailability of the transcript, Mr. Gedeon also moved the court to transcribe and provide him with transcripts of the grand jury proceedings.

{¶20} In its written response to Mr. Gedeon's motion to dismiss, the State proposed several alternative remedies. Specifically, it suggested that the parties could depose those present at the preliminary hearing, complete an agreed statement based on their recollections, or ask the court to conduct another preliminary hearing. The trial court addressed Mr. Gedeon's motions at a pretrial hearing and, at the hearing, the State also raised the foregoing alternatives. The court ultimately agreed to order the grand jury transcripts and, subsequently, provided them to the defense. In doing so, it denied Mr. Gedeon's motion to dismiss.

{¶21} Following his review of the grand jury transcripts, Mr. Gedeon filed two additional motions to dismiss. First, he renewed his request to dismiss due to the unavailability of a preliminary hearing transcript, as the grand jury transcript had proven to be an inadequate substitute. Second, he moved to dismiss based on alleged misconduct that had occurred at grand jury. According to Mr. Gedeon, his indictment was secured as a result of hearsay testimony and otherwise incompetent evidence. Upon review, the trial court denied Mr. Gedeon's motions.

Preliminary Hearing Transcript

{¶22} As to the unavailability of the preliminary hearing transcript, Mr. Gedeon argues that he was entitled to a dismissal because the State failed to propose an adequate alternative or demonstrate that the transcript was not valuable to his defense. He claims that he was not required "to use his efforts or aid 'joint efforts' to prosecute the case against him." Because it was the State's burden to remedy the transcript error, he argues, a dismissal was the appropriate remedy.

{¶23} A preliminary hearing transcript "is presumed valuable to a defendant," as it may "prove especially useful in impeaching a prosecuting witness." *State v. Jones*, 9th Dist. Lorain No. 92CA005334, 1992 WL 380621, *1 (Dec. 16, 1992). *See also State v. Arrington*, 42 Ohio St.2d 114 (1992). If a technical error causes the transcript to be unavailable, "the [S]tate bears the burden of meeting a two-part test. First, [it] must demonstrate that alternative means exist to remedy the error. Second, [it] must show that a verbatim transcript is not valuable for an effective defense." *Jones* at *1. While the State bears the foregoing burden, the duty to reconstruct preliminary hearing testimony "is not fully on the prosecuting attorney * * *." *Id.* at fn.1. It is ultimately the court's duty to make a record of the preliminary hearing, *id.*, and "[c]ounsel are obligated to assist as officers of the court * * *." *State v. Ferguson*, 64 Ohio App.2d 165, 166 (1st Dist.1979), fn. 3.

{¶24} Upon review, we reject Mr. Gedeon's argument that the State failed to satisfy its burden under the two-part test outlined in *Jones*. The record reflects that the State proposed several alternatives to the preliminary hearing transcript, including scheduling depositions, completing an agreed statement of the preliminary hearing proceedings, or scheduling another preliminary hearing. Yet, Mr. Gedeon rejected its suggestions and indicated that he wanted to review the grand jury transcripts before any other alternatives were pursued. At the June 9, 2017 pretrial, defense counsel went so far as to say that the State had "made [its] suggestive substitute[s]" and had "met [its] obligation * * * under the *Ferguson* case." *See Jones* at *1, fn.1, citing *Ferguson* at 166, fn. 3. Though he later claimed that the grand jury transcripts did not, in fact, afford him an adequate remedy, it was the State's burden to set forth viable alternatives, not fool-proof ones. *See Jones* at *1. Because the record supports the conclusion that the State satisfied its burden in that regard, we reject Mr. Gedeon's argument to the contrary.

{¶25} We further reject Mr. Gedeon's argument that the lack of a preliminary hearing transcript denied him an effective defense. *See id.* As a result of open-file discovery, Mr. Gedeon was privy to all of the State's evidence. *See id.* He was provided with the grand jury transcripts and had the opportunity to examine witnesses at the suppression hearing. Those witnesses included the officer who testified at the preliminary hearing and the municipal court prosecutor who conducted that hearing. Defense counsel was able to examine those witnesses based on his recollection of the preliminary hearing because he acted as Mr. Gedeon's counsel therein. Thus, while the preliminary hearing was not transcribed, he had the opportunity to hear and elicit testimony at that hearing and take note of "any potential evidentiary weaknesses" in the State's case going forward. *State v. Malone*, 9th Dist. Lorain No. 12CA010153, 2013-Ohio-2605, ¶ 11. *Compare Arrington* at 118. Upon review, the State demonstrated "that the lack of a verbatim transcript did not deny [Mr. Gedeon] an effective defense." *Jones* at *2. As such, we reject Mr. Gedeon's argument to the contrary.

Grand Jury Misconduct

{¶26} As to the alleged grand jury misconduct, Mr. Gedeon argues that he was entitled to a dismissal because the officer who testified at grand jury improperly commented on his right to remain silent. He argues that, while the evidentiary rules have limited application at grand jury, the laws of privilege still apply. Because the State used his invocation of his right to remain silent against him at grand jury, he argues, the court erred by denying his motion to dismiss.

{¶27} Even if the officer who testified before the grand jury improperly commented on Mr. Gedeon's right to remain silent, Mr. Gedeon has not shown that he was entitled to a dismissal on that basis. The United States Supreme Court has held that

> [t]he grand jury's sources of information are widely drawn, and the validity of an indictment is not affected by the character of the evidence considered. Thus, an

> indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence, * * * *or even on the basis of information obtained in violation of a defendant's Fifth Amendment privilege against self-incrimination* * * *.

(Internal citations omitted and emphasis added.) *United States v. Calandra*, 414 U.S. 338, 344-345 (1974). *Accord State v. Muenick*, 26 Ohio App.3d 3, 5 (9th Dist.1985). Though Mr. Gedeon acknowledges the federal precedent on this issue, he argues that he is entitled to additional protection under state law. He asserts, in a single sentence, that "Ohio's Constitution provides greater protection than federal law for violation of the privilege against self-incrimination. *State v. Farris*, 109 Ohio St.3d 519, 2006-Ohio-3255, ¶ 48, 49."

**{¶28}** The *Farris* Court determined that the Ohio Constitution "provides greater protection to criminal defendants than the Fifth Amendment to the United States Constitution." *Farris* at ¶ 48. Yet, the only issue in *Farris* was whether the police could use a defendant's pre-*Miranda*, custodial statements to secure physical evidence "where possession [was] the basis for the crime and physical evidence [was] the keystone of the case * * *." *Id.* at ¶ 49. That issue is not present in this case because the police secured physical evidence against Mr. Gedeon as a result of the probable cause search they performed, not as a result of his statements. *Farris* did not concern the effect of a defendant's invocation of his right to remain silent or an attempt on the part of the State to use that invocation against him at grand jury. Further, the *Farris* Court specifically recognized that essentially identical provisions of the United States and Ohio Constitutions should be harmoniously interpreted "unless there are persuasive reasons to do otherwise." *Id.* at ¶ 47. Apart from his single, blanket statement that the Ohio Constitution provides greater protection than the United States Constitution, Mr. Gedeon has not offered any analysis or support for his argument that, under these facts, he was entitled to additional rights under the Ohio Constitution. This Court will not undertake an analysis on his behalf. *See*

App.R. 16(A)(7); *Cardone v. Cardone*, 9th Dist. Summit No. 18349, 1998 WL 224934, *8 (May 6, 1998). Accordingly, his third assignment of error is overruled.

## ASSIGNMENT OF ERROR FOUR

FAILING TO SUPPRESS EVIDENCE[.] (Sic.)

{¶29} In his fourth assignment of error, Mr. Gedeon argues that the trial court erred to the extent that it denied his motion to suppress. He argues that all of the evidence against him ought to have been suppressed because officers: (1) never secured a warrant for his arrest; (2) interrogated him after he invoked his right to remain silent; (3) interrogated him after he was appointed counsel; and (4) used a false promise to obtain his consent for a cell phone search. Upon review, we do not agree that the court erred when it denied Mr. Gedeon's motion to suppress.

{¶30} A motion to suppress presents a mixed question of law and fact:

When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

*State v. Oberholtz*, 9th Dist. Summit No. 27972, 2016-Ohio-8506, ¶ 5, quoting *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.

{¶31} "The warrantless arrest of an individual in a public place upon probable cause does not violate the Fourth Amendment." *State v. Elmore*, 111 Ohio St.3d 515, 2006-Ohio-6207, ¶ 38. *Accord* R.C. 2935.03(A)(1). The law permits an officer to arrest and detain an individual "until a warrant can be obtained." *State v. Brown*, 115 Ohio St.3d 55, 2007-Ohio-4837, ¶ 66. Following the arrest, the officer

must take the individual before a court or magistrate having jurisdiction of the offense and file or cause to be filed an affidavit describing the offense for which the individual was arrested. R.C. 2935.05; [Crim.R.] 4(E)(2). Upon the filing of the affidavit, a judge, clerk, or magistrate issues a warrant. R.C. 2935.08; *see* [Crim.R.] 4(A). "All further detention and further proceedings shall be pursuant to such affidavit * * * and warrant." R.C. 2935.08.

1993 Ohio Atty. Gen. Ops. No. 93-003, 1993 WL 349780, *1. "The plain language of R.C. 2935.08 and [Crim.R.] 4 discloses that the General Assembly and the Ohio Supreme Court intended that individuals arrested without a warrant receive a post-arrest determination to ascertain whether the arresting officer had probable cause to make the arrest." 1991 Ohio Atty. Gen. Ops. No. 91-047, 1991 WL 576728, *3. Thus, a warrantless arrest based upon probable cause is a temporary measure, not an exception that abdicates the warrant requirement. *See Brown* at ¶ 66. *See also State v. Hobbs*, 133 Ohio St.3d 43, 2012-Ohio-3886, ¶ 10, quoting *Johnson v. United States*, 333 U.S. 10, 14 (1948).

{¶32} The trial court found that the police arrested Mr. Gedeon on felony drug charges after they found a sizeable amount of marijuana, pills, and other items in the car in which he was a passenger. Following his warrantless arrest, Mr. Gedeon was transported to the jail. The officer who arrested him generated complaints for each of his charges and swore to their veracity before a Deputy Clerk of the Stow Municipal Court. Nevertheless, the warrant section of each complaint was left blank such that no arrest warrant was ever issued. Ten days after his arrest, a probable cause determination was made at Mr. Gedeon's preliminary hearing.

{¶33} The trial court found that the State violated Mr. Gedeon's rights when it detained him for more than 48 hours without a judicial determination of probable cause. *See County of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991). Yet, it concluded that his detention did not become unlawful until the expiration of that 48-hour period. Moreover, it concluded that his detention resumed its lawful status once a probable cause determination took place at the

preliminary hearing. As a result of those conclusions, the trial court refused to suppress any evidence the police obtained during two distinct periods: (1) from the moment of Mr. Gedeon's arrest until the expiration of the 48-hour period; and (2) after the preliminary hearing occurred. That evidence included the physical evidence the police confiscated when they arrested Mr. Gedeon, statements he made during several interrogations, and the results of the search they performed on his cell phone.

{¶34} Mr. Gedeon challenges the scope of the trial court's suppression ruling. Because the police never attempted to secure a warrant for his arrest, he argues, he became subject to an unlawful detainment at the moment of his arrest. Accordingly, he asserts that "[t]he exclusionary rule applied to all evidence seized from arrest until determination of probable cause."

{¶35} Mr. Gedeon has not challenged any of the trial court's factual findings and, upon review, the record contains competent, credible evidence in support of those findings. *See Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶ 8. The officer who arrested Mr. Gedeon readily admitted that he never sought an arrest warrant following Mr. Gedeon's warrantless arrest. Further, the State conceded that Mr. Gedeon did not receive a judicial determination of probable cause until his preliminary hearing, ten days after his arrest. Because Mr. Gedeon's challenge only concerns the trial court's application of the exclusionary rule and not its factual findings, the issue before us is strictly one of law. We, therefore, accept the trial court's findings as true and review its legal conclusions de novo. *Id.*

{¶36} Mr. Gedeon was entitled to a prompt judicial determination of probable cause in the wake of his warrantless arrest. By not securing a warrant for his arrest or explaining why he was not provided with that prompt determination, the State violated R.C. 2935.08, Crim.R. 4, and his constitutional rights. *See McLaughlin*, 500 U.S. at 56-58; *Hobbs*, 133 Ohio St.3d 43,

2012-Ohio-3886, at ¶ 8-13; 1991 Ohio Atty. Gen. Ops. No. 91-047, 1991 WL 576728, at *3. While Mr. Gedeon claims that those violations triggered the exclusionary rule, we need not resolve that issue on appeal. *See Hobbs*, 133 Ohio St.3d 43, 2012-Ohio-3886, at ¶ 24 (expressly declining to decide the issue of "whether the exclusionary rule is an appropriate remedy for an invalidly issued arrest warrant"); *State v. Berry*, 80 Ohio St.3d 371, 384 (1997), fn. 9 ("[I]t is far from clear that the exclusionary rule will be applied to freestanding *McLaughlin* claims."). That is because, even if the rule generally applies to violations of the sort that occurred herein, Mr. Gedeon has not shown that the trial court committed reversible error when it denied his motion to suppress.

{¶37} The exclusionary rule "is a judicially created sanction intended to safeguard constitutional rights by deterring Fourth Amendment violations." *Hobbs* at ¶ 21. As such, it only acts "'to exclude evidence that flows from, and is the result of, the violation of a person's constitutional rights.'" *State v. Graves*, 9th Dist. Medina No. 13CA0068-M, 2014-Ohio-5477, ¶ 12, quoting *Hobbs* at ¶ 18. "The rule does not prohibit the admission of evidence that 'has been discovered by means entirely independent of any constitutional violation.'" *State v. Bryner*, 9th Dist. Lorain No. 18CA011257, 2018-Ohio-3215, ¶ 17, quoting *State v. Perkins*, 18 Ohio St.3d 193, 194 (1985). The rationale behind the rule is served "only if the prosecution is put in the same, but not worse, position [than] had the misconduct not occurred." *Perkins* at 195.

{¶38} The trial court found that the police possessed probable cause for the stop and search of the vehicle in which Mr. Gedeon was riding as a passenger. The search uncovered more than 16.4 grams of marijuana, 119 Oxycodone pills, baggies, and a scale. Additionally, a search of Mr. Gedeon's person uncovered a large sum of cash and a cell phone. Mr. Gedeon has not challenged the validity of the traffic stop on appeal. Nor has he argued that the police lacked

probable cause to search the vehicle or his person. *See* App.R. 16(A)(7). The evidence the police secured as a result of the stop and their probable cause searches was discovered prior to Mr. Gedeon's arrest. It, therefore, was "discovered by means entirely independent of any constitutional violation" and was not subject to the exclusionary rule. *Bryner* at ¶ 17, quoting *Perkins* at 194. *See also Hobbs*, 133 Ohio St.3d 43, 2012-Ohio-3886, ¶ 22-23.

{¶39} As to Mr. Gedeon's cell phone, the trial court specifically found its contents admissible pursuant to the independent source exception. It found that the police procured a warrant to search the phone and the affidavit underlying the warrant did not rely on any of Mr. Gedeon's post-arrest statements. Instead, the affidavit relied on facts associated with the traffic stop and the affiant's personal knowledge of how cell phones are used to facilitate drug deals. Mr. Gedeon claims that no independent basis for the cell phone search existed because the search warrant affidavit "was based on the arrest reports made during unlawful detention." He also claims that "R.C. §2933.21 et.seq. warrant protections were ignored" because the police failed to serve the owner of the phone (i.e., his mother) with a copy of the warrant, an inventory, or a return.

{¶40} The timeframe during which Mr. Gedeon's arrest reports were transcribed is irrelevant. The only question is whether the police used information they obtained during his unlawful detainment to secure their warrant. *See Bryner* at ¶ 17. Mr. Gedeon has not shown that the police used that information to supply the probable cause for their warrant. Further, to the extent the police failed to abide by the service requirements of R.C. 2933.21, et seq., he has not shown that suppression is the proper remedy for a statutory violation of that nature. *See* App.R. 16(A)(7); *Cardone v. Cardone*, 9th Dist. Summit No. 18349, 1998 WL 224934, *8 (May 6, 1998). Because Mr. Gedeon has not shown that his unlawful detainment provided the foundation

for the search of his cell phone, we cannot conclude that the trial court erred by refusing to suppress that evidence.[1] *See Graves*, 2014-Ohio-5477, at ¶ 13-15; *Bryner* at ¶ 17.

**{¶41}** The only evidence the police secured against Mr. Gedeon as a direct result of his unlawful detainment came in the form of statements he made during three interrogations.[2] Mr. Gedeon argues that the court ought to have suppressed his statements because (1) his unlawful detainment rendered them subject to the exclusionary rule, (2) his first interrogation occurred after he had already invoked his right to remain silent, and (3) his second and third interrogations occurred outside the presence of his appointed counsel. Even assuming the court erred by not suppressing those statements, however, we find that error harmless beyond a reasonable doubt in light of the other, overwhelming evidence the State produced at trial. *See State v. Hill*, 64 Ohio St.3d 313, 320 (1992).

**{¶42}** None of the physical evidence the police obtained during Mr. Gedeon's traffic stop was subject to suppression. That evidence included the marijuana, Oxycodone, baggies, scale, and $2,100 he had in his wallet. There was testimony that the police observed Mr. Gedeon making furtive movements and nervously glancing at the glove box during the stop. There also was testimony that the large, bundled sum of cash he was carrying was indicative of drug dealing, particularly when combined with the drugs, baggies, and scale. Moreover, the State introduced a wealth of text messages it retrieved from Mr. Gedeon's cell phone. Those messages

---

[1] Mr. Gedeon also has argued that he did not knowingly, intelligently, and voluntarily consent to the search of his phone. The police obtained his consent during one of his interrogations, but then also secured a search warrant for the contents of the phone. Because the warrant provided an independent basis for the search of the phone, we need not address Mr. Gedeon's claim that the police used a false promise to secure his consent. *See* App.R. 12(A)(1)(c).

[2] The trial court suppressed the evidence obtained during a fourth interrogation.

tracked his purchase of the Oxycodone pills and contained several requests from individuals looking to purchase Oxycodone from him. Accordingly, even disregarding the statements Mr. Gedeon made during his interrogations, the State produced an overwhelming amount of evidence in support of his convictions. This Court, therefore, concludes that the trial court did not commit reversible error when it denied Mr. Gedeon's motion to suppress. *See Calise*, 2012-Ohio-4797, at ¶ 42 ("[T]his Court may affirm its ultimate decision on other legally correct grounds."). His fourth assignment of error is overruled.

## ASSIGNMENT OF ERROR TWO

DENYING ACQUITTAL ABSENT EVIDENCE OF ESSENTIAL ELEMENTS[.] (Sic.)

**{¶43}** In his second assignment of error, Mr. Gedeon argues that his conviction for aggravated trafficking in a controlled substance is based on insufficient evidence. According to Mr. Gedeon, the State failed to prove that he trafficked in a bulk amount of Oxycodone. We disagree.

**{¶44}** "A sufficiency challenge of a criminal conviction presents a question of law, which we review de novo." *State v. Spear*, 9th Dist. Summit No. 28181, 2017-Ohio-169, ¶ 6, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "Sufficiency concerns the burden of production and tests whether the prosecution presented adequate evidence for the case to go to the jury." *State v. Bressi*, 9th Dist. Summit No. 27575, 2016-Ohio-5211, ¶ 25, citing *Thompkins* at 386. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. In analyzing the sufficiency of the State's evidence, this Court does not "resolve

evidentiary conflicts or assess the credibility of witnesses[] because these functions belong to the trier of fact." *State v. Hall*, 9th Dist. Summit No. 27827, 2017-Ohio-73, ¶ 10.

**{¶45}** A person is guilty of aggravated trafficking if he knowingly

[p]repare[s] for shipment, ship[s], transport[s], deliver[s], prepare[s] for distribution, or distribute[s] a [schedule I or II] controlled substance * * *, when [he] knows or has reasonable cause to believe that the controlled substance * * * is intended for sale or resale by [him] or another person.

R.C. 2925.03(A)(2)/(C)(1). Oxycodone is a Schedule II controlled substance. R.C. 3719.41(A)(1)(n). A "bulk amount" of oxycodone is "[a]n amount equal to or exceeding twenty grams or five times the maximum daily dose * * * specified in a standard pharmaceutical reference manual * * *." R.C. 2925.01(D)(1)(d).

**{¶46}** Mr. Gedeon was convicted of trafficking in Oxycodone in an amount between one and five times the bulk amount of the drug. As support for his conviction, the State produced the 119 pills recovered during his traffic stop. Of those 119 pills, 67 pills were labeled as being 10 milligrams in strength and 52 pills were labeled as being 7.5 milligrams in strength. The State submitted the pills to the Bureau of Criminal Investigation ("BCI") for testing and submitted as an exhibit the report of the analyst who tested them. The report indicated that the analyst tested one of the 10 milligram pills and one of the 7.5 milligram pills "using logo identification and instrumental analysis." The report further indicated that, based on the testing performed, the pills were found to contain Oxycodone. Because Mr. Gedeon stipulated to the report, the State did not call the analyst to testify as a witness at trial.

**{¶47}** Mr. Gedeon argues that the State failed to prove his bulk amount enhancement beyond a reasonable doubt. He claims that the State failed to set forth any evidence of Oxycodone's schedule classification or the amount that constitutes a "bulk amount" of the drug. He further argues that the BCI report failed to prove bulk amount because the analyst only tested

one pill from each milligram group. He claims that the testing of only one pill from each group was "not enough to support an inference to a reasonable degree of scientific certainty about the remaining pills."

{¶48} We reject Mr. Gedeon's argument that the State was required to set forth evidence of Oxycodone's schedule classification or bulk amount. Oxycodone's schedule classification and its bulk amount are set forth by statute. *See* R.C. 3719.41(A)(1)(n); R.C. 2925.01(D)(1)(d). It was not the State's burden to set forth evidence of those statutory definitions because the trial court was required to take judicial notice of those definitions as a matter of law. Civ.R. 44.1(A)(1) ("Judicial notice shall be taken * * * of the decisional, constitutional, and public statutory law of this state."). *See also* Crim.R. 27 (judicial notice provisions of Civ.R. 44.1 apply in criminal cases). Moreover, because the State prosecuted Mr. Gedeon based on the weight of the Oxycodone in his possession, there was no need for it to set forth evidence of the drug's maximum daily dosage. *Compare State v. Pountney*, 152 Ohio St.3d 474, 2018-Ohio-22, ¶ 35. The State only had to prove that he trafficked in at least twenty grams of the drug. R.C. 2925.01(D)(1)(d).

{¶49} This Court has held that "a random sampling of pills from a bulk quantity is sufficient to support an inference that all of the pills contain the same drug, if the defendant offers no rebuttal." *State v. Mathis*, 9th Dist. Summit No. 23507, 2007-Ohio-2345, ¶ 12. The analyst who tested both the 10 milligram Oxycodone pills and the 7.5 milligram Oxycodone pills sampled one pill from each group and concluded that the pills contained Oxycodone. Mr. Gedeon failed to present any evidence to rebut her conclusions. The trial court, therefore, reasonably could have concluded that all 119 pills contained Oxycodone. *See id. Accord State v. Garnett*, 9th Dist. Medina No. 12CA0088-M, 2013-Ohio-4971, ¶ 7. From there, the trial court

only needed to multiply the number of pills by their weight to conclude that Mr. Gedeon had trafficked in at least 20 grams of the drug. Mr. Gedeon has not argued that the court committed a mathematical error. *See* App.R. 16(A)(7). Nor has he demonstrated that the court lacked the authority to perform that simple calculation. *See id.* Upon review, we reject Mr. Gedeon's argument that his conviction is based on insufficient evidence. As such, his second assignment of error is overruled.

## III.

**{¶50}** Mr. Gedeon's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

CARR, J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

MARK H. LUDWIG, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE S. CORGAN, Assistant Prosecuting Attorney, for Appellee.