[Cite as *State v. Russell*, 2022-Ohio-1746.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

STATE OF OHIO,                          :

                        Plaintiff-Appellee,    :    Case
                        No.  21CA3750

            v.                          :

ANTONIO M. RUSSELL,                     :    DECISION AND
                        JUDGMENT ENTRY

      Defendant-Appellant.       :

_____

APPEARANCES:

Dennis C. Belli, Columbus, Ohio, for appellant.[1]

Jeffrey C. Marks, Ross County Prosecuting Attorney, and Pamela
C. Wells, Ross County Assistant Prosecuting Attorney, for
appellee.

_____

CRIMINAL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED:5-19-22
ABELE, J.

    {¶1}   This is an appeal from a Ross County Common Pleas

Court judgment of conviction and sentence.  Antonio M. Russell,

defendant below and appellant herein, assigns the following

errors for review:

        FIRST ASSIGNMENT OF ERROR:

_____

      [1] Different counsel represented appellant during the trial
court proceedings.

"DEFENDANT-APPELLANT'S CONVICTION FOR POSSESSION OF HEROIN IS NOT SUPPORTED BY SUFFICIENT EVIDENCE TO SATISFY THE REQUIREMENTS OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION."

SECOND ASSIGNMENT OF ERROR:

"THE TRIAL COURT VIOLATED R.C. 2941.75 AND DEPRIVED DEFENDANT-APPELLANT OF HIS RIGHTS UNDER THE DUE PROCESS AND JURY TRIAL GUARANTEES OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION WHEN IT ENTERED A JUDGMENT OF CONVICTION FOR A SECOND DEGREE FELONY THAT WAS NOT SUPPORTED BY A JURY VERDICT STATING THE DEGREE OF OFFENSE OR A FINDING OF THE DRUG AMOUNT CORRESPONDING TO A SECOND DEGREE FELONY."

THIRD ASSIGNMENT OF ERROR:

"THE ADMISSION OF EVIDENCE INTENDED BY THE PROSECUTION TO PORTRAY DEFENDANT-APPELLANT AS A DRUG TRAFFICKER VIOLATED THE MANDATORY EXCLUSION PROVISIONS OF EVID.R. 403(A) AND THE HEARSAY EXCLUSIONARY RULE OF EVID.R. 802, AND DEPRIVED HIM OF HIS RIGHT TO DUE PROCESS AND THE RIGHT OF CONFRONTATION UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION."

FOURTH ASSIGNMENT OF ERROR:

"DEFENSE COUNSEL'S FAILURE TO REQUEST A JURY INSTRUCTION EXPLAINING THE TEMPORAL REQUIREMENT TO PROVE VOLUNTARY POSSESSION UNDER R.C. 2901.21(F)(1) OR TO OBJECT TO ITS OMISSION DEPRIVED DEFENDANT-APPELLANT OF HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION."

{¶2} On June 5, 2018, law enforcement officers executed a search warrant upon room number 84 at America's Best Value Inn in Chillicothe. Upon entering the motel room, officers found appellant, a female, and three children. On the floor where appellant had been laying, officers discovered a plastic bag that contained a white powdery substance. Inside the night stand drawer, they found a "chunky ball" that appeared to be narcotics and a digital scale. The substance found on the floor subsequently tested positive for heroin, and the "chunky ball" tested positive for cocaine.

{¶3} On April 26, 2019, a Ross County Grand Jury returned an indictment that charged appellant with one count of second-degree-felony heroin possession and one count of fourth-degree-felony cocaine possession, both in violation of R.C. 2925.11. Appellant entered not-guilty pleas.

{¶4} On April 13 and 14, 2021, the trial court held a jury trial. At trial, Ohio Bureau of Criminal Investigation forensic scientist Pamela Farley testified that she tested the two substances discovered inside the motel room. The item recovered from the floor contained 20.81 grams of heroin and fentanyl. The other substance contained 7.81 grams of cocaine.

{¶5} On cross-examination, appellant's counsel asked Farley whether she tested the entire contents of the substances or

whether she tested "a small sample." Farley stated that she tested a sample. She explained she did her "best to take a composite sample to make sure things are homogenous and that we're not-we don't have two different colors of things present in something." Farley additionally stated that she separates items when possible so that "the sample is reflective of the entire exhibit."

{¶6} Chillicothe Police Detective Chester Lytle testified that after SWAT officers secured the motel room, Lytle helped search the room. Lytle indicated that he first searched the night stand and inside a drawer he found a digital scale and what appeared to be "chunky narcotics" wrapped in plastic.

{¶7} Chillicothe Police Officer Christopher King testified that he searched appellant and found "a large sum of U.S. currency." Appellant objected to Officer King's testimony and asserted he does not "know what relevance any amount of money found on his person has" to the drug possession charges. The court overruled the objection and explained that "it is just a general question about what was found on his person."

{¶8} On cross-examination, appellant asked Officer King whether he found any other items on appellant other than "the sum of currency." King stated that he did not discover any other items on appellant's person.

**{¶9}** Chillicothe Police Sergeant Jeremy Tuttle testified that he placed the evidence recovered from the motel room into the evidence room at the law enforcement complex. He described exhibit 21 as a "set of digital scales."

**{¶10}** Chillicothe Police Detective Derek Wallace testified that he is a detective in the Special Investigations Unit (SIU). He explained that he primarily investigates drug and prostitution activity. When the prosecutor asked Wallace to discuss the investigatory methods he uses when investigating drug activity, appellant objected on the basis of relevance. The prosecutor argued that this testimony would help the jury to understand why officers searched the motel room. The trial court found that the testimony would help the jury understand the detective's experience and overruled appellant's objection.

**{¶11}** The detective then explained the types of investigative methods that he generally uses:

> We have obviously Southern Ohio Crime Stoppers in Chillicothe that provides information on different drug activity people, inside the City of Chillicothe. We also rely on information from our patrol officers to gather information for us when they're out doing traffic stops or in neighbors talking to people that provide us the information on drug activity. We also use our confidential informants. They provide us a lot of information as to kind of who, what, when, where, why.

{¶12} Detective Wallace stated that he undertook "similar investigatory acts" when he investigated the activity that allegedly occurred at appellant's motel room.

{¶13} The prosecutor next asked the detective whether he used "similar investigatory actions" to obtain a warrant to search the motel room. The detective responded affirmatively, and appellant objected. Appellant asserted that the prosecutor was "getting real close to making this look like a trafficking investigation, because there's controlled vital [sic] information in the search warrant." The prosecutor indicated that she did not intend to ask the detective to discuss any specific information contained in the search warrant. The court stated that it would not allow any testimony "other than they obtained a search warrant."

{¶14} Detective Wallace continued to explain that he and his team obtained a warrant to search the motel room. When they arrived to execute the warrant, the SWAT team opened the door with a battering ram then secured the scene. After the SWAT team gave officers the all-clear, Wallace entered the room. When he entered the room, he observed appellant "laying behind the doorway," and a female with three small children on one of the beds. When he and other officers removed appellant from the floor, Wallace found a plastic bag of white powder on the floor.

{¶15}  When the prosecutor asked Detective Wallace to place a green X on a motel room diagram to indicate where he found the plastic bag of heroin, Wallace explained that he placed the X "behind the door, just on the door side of where the refrigerator would've been.  Obviously, it's not to scale, but it was on just this side where the little white refrigerator was by the entertainment center."  Wallace also drew a stick figure to depict appellant's position when the detective initially entered the room.  The detective explained that appellant's head had been facing into the room and that his feet "behind where the door would swing against the outermost wall."

{¶16}  During Detective Wallace's testimony, the state asked the detective to describe the photographs that officers had taken during the search-warrant execution.  One photograph depicted "the floor, just behind the door," and Wallace stated that this photograph showed "the floor," "a vent, smashed trashcan, piece of paper, and a bag of white powder."

{¶17}  After Detective Wallace's testimony, the state rested. Appellant then moved for a judgment of acquittal and the trial court overruled the motion as it related to the heroin-possession offense, but granted a judgment of acquittal regarding the cocaine-possession offense.

ROSS, 21CA3750

{¶18}  On April 16, 2021, the jury found appellant guilty of heroin possession "as he stands charged in Count One of the indictment."  The trial court subsequently sentenced appellant to serve six years in prison.  This appeal followed.

I

{¶19}  In his first assignment of error, appellant asserts that the state failed to present sufficient evidence to support his heroin possession conviction.  In particular, appellant contends that (1) the state did not present sufficient evidence to establish that appellant knew the plastic bag contained a controlled substance; (2) the physical evidence refutes the state's assertion that officers found appellant behind the door laying on top of the bag of heroin; (3) the evidence fails to show that appellant voluntarily possessed the heroin; and (4) the state failed to present sufficient evidence that appellant possessed more than 10, but less than 50, grams of heroin.

A

{¶20}  A claim of insufficient evidence invokes a due process concern and raises the question whether the evidence is legally sufficient to support the verdict as a matter of law.  *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).  When reviewing the sufficiency of the evidence, our inquiry focuses primarily upon the adequacy of the evidence; that is, whether

ROSS, 21CA3750

the evidence, if believed, reasonably could support a finding of guilt beyond a reasonable doubt. *Id.* at syllabus. The standard of review is whether, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. *E.g., Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Jenks*, 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991). Furthermore, a reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *Thompkins*, 78 Ohio St.3d at 390 (Cook, J., concurring).

{¶21} Thus, when reviewing a sufficiency-of-the-evidence claim, an appellate court must construe the evidence in a light most favorable to the prosecution. *E.g., State v. Hill*, 75 Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996); *State v. Grant*, 67 Ohio St.3d 465, 477, 620 N.E.2d 50 (1993). A reviewing court will not overturn a conviction on a sufficiency-of-the-evidence claim unless reasonable minds could not reach the conclusion that the trier of fact did. *State v. Tibbetts*, 92 Ohio St.3d 146, 162, 749 N.E.2d 226 (2001); *State v. Treesh*, 90 Ohio St.3d 460, 484, 739 N.E.2d 749 (2001).

B

{¶22} R.C. 2925.11(A) contains the essential elements of the offense at issue, possession of drugs. The statute states: "No person shall knowingly obtain, possess, or use a controlled substance * * *." Appellant first argues that the state failed to present sufficient evidence to establish that he knowingly possessed heroin. Appellant claims that the evidence adduced at trial fails to show that he knew that the plastic bag contained heroin.

{¶23} R.C. 2901.22(B) defines when a person acts knowingly:

A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when a person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

{¶24} We observe that "'[t]he intent of an accused person dwells in his mind'" and that intent "'can never be proved by the direct testimony of a third person.'" *State v. Johnson*, 56 Ohio St.2d 35, 38, 381 N.E.2d 637 (1978), quoting *State v. Huffman*, 131 Ohio St. 27, 1 N.E.2d 313 (1936), paragraph four of the syllabus. Rather, intent "'must be gathered from the surrounding facts and circumstances under proper instructions

from the court.'"  *Id.*, quoting *Huffman*, paragraph four of the syllabus; *e.g., State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 143; *State v. Garner*, 74 Ohio St.3d 49, 60, 656 N.E.2d 623 (1995).  We further observe that "[i]ntention is a question of fact, and not one of law."  *Koenig v. State*, 121 Ohio St. 147, 151, 167 N.E. 385 (1929); *State v. Wamsley*, 6th Dist. Butler No. CA2002-05-109, 2003-Ohio-1872, ¶ 18.

**{¶25}**  Whether a defendant knowingly possessed a controlled substance "is to be determined from all the attendant facts and circumstances available."  *State v. Teamer*, 82 Ohio St.3d 490, 492, 696 N.E.2d 1049 (1998); *accord State v. Corson*, 4th Dist. Pickaway No. 15CA4, 2015-Ohio-5332, ¶ 13.  Additionally, "'[t]he state may rely solely on circumstantial evidence in proving that the defendant had knowledge of the character of the material.'"  *State v. Sanders*, 2nd Dist. Clark No. 2019-CA-86, 2021-Ohio-2431, ¶ 12, quoting *State v. Kraft*, 1st Dist. Hamilton No. C-060238, 2007-Ohio-2247, ¶ 87, citing *State v. Burgin*, 56 Ohio St.2d 354, 364, 384 N.E.2d 255 (1978).

**{¶26}**  To establish knowing possession of a controlled substance under R.C. 2925.11(A), the state is not required to prove that "a defendant knew the specific characteristics of the item possessed that made it" a controlled substance.  *State v. Jordan*, 89 Ohio St.3d 488, 494, 733 N.E.2d 601 (2000); *accord*

ROSS, 21CA3750

*State v. Williams*, 2nd Dist. Montgomery No. 20271, 2005-Ohio-1597, ¶ 34 ("the State is not required to prove that Defendant 'knew' the specific characteristics of the items he possessed which made them controlled substances"). Instead, the state need only demonstrate that the defendant knew or was probably aware that the item was a controlled substance. *See Jordan*, 89 Ohio St.3d at 495 (discussing meaning of "knowledge" as defined in R.C. 2901.22(B) and evaluating state's evidence regarding defendant's knowledge in context of possession-of-dangerous-ordnance statute).

{¶27} Additionally, the state may rely upon "permissible inferences of knowledge, based at least in part upon fact," to show that a defendant had knowledge that the item possessed was a controlled substance. *Id.* Consequently, even "if the accused did not know for certain that the item in his possession was [a controlled substance], the state can still show culpability by objective demonstrations of the defendant's mental state." *Id.* We further observe that "[e]ntirely innocent conduct should not be punishable." *Id.* Thus, when "a defendant, in good faith, has no way of determining that the item in his possession is [a controlled substance], he or she should not be subject to prosecution." *Id.*

{¶28} In the case sub judice, appellant asserts that the state failed to present direct evidence that appellant knew the plastic bag contained heroin and that the circumstantial evidence fails to support a finding that he knew that the bag contained heroin. Appellant recognizes that Detective Wallace described the contents of the bag as a white powder, but contends that appellant's knowledge that the bag contained heroin cannot be inferred from the substance's mere physical appearance. Appellant also argues that he did not engage in any conduct indicative of guilty knowledge. He states that he complied with the officers' orders and did not attempt to conceal or hide evidence.

{¶29} The state argues that it presented sufficient evidence to show that appellant knew that the bag contained heroin. The state points out that it presented evidence that officers found appellant laying on top of the plastic bag in a small motel room. The state also asserts that the illegal nature of the substance contained in the plastic bag was readily apparent. The state further notes that the jury had the opportunity to view the substance contained in the plastic bag and to reach its own conclusion whether the substance's illegal nature was readily apparent such that appellant knew, or probably was aware, that the substance is a controlled substance.

**{¶30}** In the case at bar, we believe that the state presented sufficient evidence to establish that appellant knew, or probably was aware, that the substance inside the plastic bag is a controlled substance. As the state notes, officers found appellant laying on top of the plastic bag that contained a white powdery substance. The state introduced into evidence the plastic bag that contained the substance, as well as photographs of the plastic bag. The jury viewed both the photographs and the physical evidence, i.e., the substance contained in the plastic bag. The jury thus had the opportunity to consider whether the nature of the substance would have led one in possession of the bag to know, or to probably be aware, that the item inside the bag is a controlled substance. Obviously, the jury determined that the illegal nature of the substance is readily apparent. Consequently, under these circumstances, we believe that the state presented sufficient evidence to show that appellant knew that the plastic bag contained a controlled substance.

**{¶31}** Additionally, we do not agree with appellant that any lack of evidence regarding his attempts to conceal the evidence, or to act evasively, means that the state failed to present sufficient evidence that appellant knew that the plastic bag contained a controlled substance. Instead, the evidence adduced

ROSS, 21CA3750

at trial constitutes sufficient evidence of appellant's knowledge. Any arguable lack of evidence concerning appellant's conduct would go to the weight, not the sufficiency, of the evidence. *See State v. Wilks*, 154 Ohio St.3d 359, 2018-Ohio-1562, 114 N.E.3d 1092, ¶ 166 ("the state need only have had sufficient evidence, not the best possible evidence, to survive a challenge on insufficiency grounds"); *State v. Turner*, 9th Dist. Summit No. 28775, 2018-Ohio-3898, ¶ 24 ("fact that the State did not present a particular type of evidence does not negate the sufficiency of the * * * evidence that the State did present").

B

**{¶32}** Appellant next argues that the state did not present sufficient, credible evidence that he possessed the bag of heroin. Specifically, appellant claims that Detective Wallace's testimony that officers found appellant laying on the floor behind the motel room's door violates the "physical facts rule," and thus, completely lacking such credibility.

**{¶33}** The Ohio Supreme Court discussed the "physical facts rule" in *McDonald v. Ford Motor Co.*, 42 Ohio St.2d 8, 12, 326 N.E.2d 252 (1975). In general, the rule provides that when a witness's testimony "'is opposed to the laws of nature,'" or "'is clearly in conflict with principles established by the laws

of science,'" then the testimony "'is of no probative value and a jury is not permitted to rest its verdict thereon.'" *Id.*, quoting *Connor v. Jones*, 115 Ind.App. 660, 670, 59 N.E.2d 577 (1945). In other words, "'[t]he testimony of a witness which is positively contradicted by the physical facts cannot be given probative value by the court.'" *Id.*, quoting *Lovas v. General Motors Corp.*, 212 F.2d 805, 808 (6 Cir. 1954). "[T]he issue is generally whether circumstantial evidence of physical facts is so conclusive as to wholly rebut oral testimony presenting a different version." *Id.* at 13-14.

For example:

Where a witness testifies that he looked and listened at a railroad crossing, but neither saw nor heard a train approaching, and the only reasonable conclusion upon the evidence is that there is no doubt that had he looked he must have seen the train, the witness's testimony cannot be considered credible.

*Id.*, citing *Detroit, Toledo & Ironton Rd. Co. v. Rohrs*, 114 Ohio St. 493, 151 N.E. 714 (1926).

**{¶34}** Under the physical facts rule, a trial court need not "take a case from the jury" unless "'[t]he palpable untruthfulness'" of the witness's testimony is

"(1) inherent in the rejected testimony, so that it contradicts itself or (2) irreconcilable with facts of which, under recognized rules, the court takes judicial knowledge or (3) is obviously inconsistent with, contradicted by, undisputed physical facts."

ROSS, 21CA3750

*Id.* at 12-13, quoting *Duling v. Burnett*, 22 Tenn.App. 522, 124

S.W.2d 294 (1938).

> The intent of the rule is to
>
> strike[] a balance between, on the one hand, the common sense notion that physical facts and evidence can be so conclusive and demonstrative that no reasonable person could accept the truth of contrary testimony, and, on the other hand, the need for courts to be wary of treating a party's theory of a case as "fact," when a different theory is also possible in the case.

*Id.* at 13.

{¶35} In the case sub judice, we do not agree with appellant

that Detective Wallace's testimony should be viewed as so

palpably untrue as to have required the trial court to remove

the case from the jury. Here, the physical facts do not

positively contradict Wallace's testimony that appellant was

laying on the floor behind the motel room's door when the

detective entered the room. Wallace stated that he entered the

motel room after SWAT officers secured the scene. He explained

that, after SWAT officers entered the room, they would have

ordered everyone in the room to get on the floor. When Wallace

entered the room, appellant was laying with his feet behind the

door and his head pointing into the motel room. The detective

did not testify that appellant's entire body was crammed between

the door and the wall. Therefore, we do not believe that the

detective's testimony positively contradicts the physical facts.

{¶36} Furthermore, we do not agree with appellant that SWAT officers' use of a battering ram to open the door necessarily results in the conclusion that Detective Wallace could not have found appellant laying behind the door. Appellant suggests that, if he had been behind the door when SWAT officers used a battering ram, the force of the door would have propelled his body into the room, not behind the door. He also implies that, had appellant been behind the door when the SWAT officers used a battering ram to open the door, officers would have observed bruising on appellant's body, but did not.

{¶37} After our review, we believe that appellant fails to recognize that the trial testimony does not conclusively establish that appellant was, in fact, behind the door when SWAT officers used a battering ram to open the door. Appellant's precise location in the motel room when officers opened the door is unknown. What is known is that, once SWAT officers ordered the individuals in the room to get on the floor, appellant placed himself on the floor and Detective Wallace found appellant with his feet behind the door and his head pointed into the room. We find nothing in the record to indicate that the physical evidence positively contradicts Wallace's testimony.

C

ROSS, 21CA3750

## Voluntary Possession

**{¶38}** Appellant next contends that the state failed to present sufficient evidence to show that he voluntarily possessed the heroin. Appellant asserts that the evidence fails to show that he possessed the heroin "for a sufficient time to have ended possession."

**{¶39}** A cardinal rule in criminal law is that a person is not guilty of an offense unless both of the following apply:

> (1) The person's liability is based on conduct that includes either a voluntary act, or an omission to perform an act or duty that the person is capable of performing;
> (2) The person has the requisite degree of culpability for each element as to which a culpable mental state is specified by the language defining the offense.

R.C. 2901.21(A).

**{¶40}** "Possession is a voluntary act if the possessor knowingly procured or received the thing possessed, or was aware of the possessor's control of the thing possessed for a sufficient time to have ended possession." R.C. 2901.21(F)(1). "The language in R.C. 2901.21(D)(1) after the comma specifically applies to a situation in which a person becomes aware he is in possession of a particular item, but does not have time to dispose of the item before being caught with it." *State v. Copeland*, 2nd Dist. Montgomery No. 23718, 2010-Ohio-4916, ¶ 26.

"Possession" is generally defined as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). "Possession * * * may be individual or joint, actual or constructive." *State v. Wolery*, 46 Ohio St.2d 316, 332, 348 N.E.2d 351 (1976); *State v. Fry*, 4th Dist. Jackson No. 03CA26, 2004-Ohio-5747, ¶ 39.

{¶41} "'Actual possession exists when the circumstances indicate that an individual has or had an item within his immediate physical possession.'" *State v. Kingsland*, 177 Ohio App.3d 655, 2008-Ohio-4148, 895 N.E.2d 633, ¶ 13 (4th Dist.), quoting *Fry* at ¶ 39. "Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *State v. Hankerson*, 70 Ohio St.2d 87, 434 N.E.2d 1362 (1982), syllabus; *State v. Brown*, 4th Dist. Athens No. 09CA3, 2009-Ohio-5390, ¶ 19. For constructive possession to exist, the state must show that the defendant was conscious of the object's presence. *Hankerson*, 70 Ohio St.2d at 91; *Kingsland* at ¶ 13; *accord State v. Huckleberry*, 4th Dist. Scioto No. 07CA3142, 2008-Ohio-1007, ¶ 34; *State v. Harrington*, 4th Dist. Scioto No. 05CA3038, 2006-Ohio-4388, ¶ 15; *Criss v. City*

*of Kent*, 867 F.2d 259, 263 (6th Cir. 1988) ("Ohio law is clear that a suspect can be in 'constructive possession' of * * * property without having actual physical possession of the property if it is located within premises under the suspect's control and he was conscious of its presence.").

{¶42} Both dominion and control, and whether a person was conscious of the object's presence, may be established through circumstantial evidence. *E.g., Brown* at ¶ 19; *see, e.g., State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph one of the syllabus ("[c]ircumstantial evidence and direct evidence inherently possess the same probative value"). "Circumstantial evidence is defined as '[t]estimony not based on actual personal knowledge or observation of the facts in controversy, but of other facts from which deductions are drawn, showing indirectly the facts sought to be proved. * * * '" *State v. Nicely*, 39 Ohio St.3d 147, 150, 529 N.E.2d 1236 (1988), quoting Black's Law Dictionary 221 (5 Ed.1979).

{¶43} Furthermore, to establish constructive possession, the state need not show that the defendant had "[e]xclusive control" over the contraband. *State v. Tyler*, 8th Dist. Cuyahoga No. 99402, 2013-Ohio-5242, ¶ 24, citing *State v. Howard*, 8th Dist. Cuyahoga No. 85034, 2005-Ohio-4007, ¶ 15, citing *In re Farr*, 10th Dist. Franklin No. 93AP-201, 1993 WL 464632, *6 (Nov. 9,

1993) (nothing in R.C. 2925.11 or 2925.01 "states that illegal drugs must be in the sole or exclusive possession of the accused at the time of the offense"). Instead, "'[a]ll that is required for constructive possession is some measure of dominion or control over the drugs in question, beyond mere access to them.'" *Howard* at ¶ 15, quoting *Farr* at *6. Thus, simply because others may have access to the contraband, in addition to the defendant, does not mean that the defendant "could not exercise dominion or control over the drugs." *Tyler* at ¶ 24; *accord State v. Walker*, 10th Dist. Franklin No. 14AP-905, 2016-Ohio-3185, ¶ 75. We further note that multiple persons may have joint constructive possession of an object. *State v. Philpott*, 8th Dist. Cuyahoga Nos. 109173, 109174, and 109175, 2020-Ohio-5267, ¶ 67; *Wolery*, 46 Ohio St.2d at 332, 329 ("[p]ossession * * * may be individual or joint" and "control or dominion may be achieved through the instrumentality of another").

**{¶44}** In the case sub judice, appellant argues that the state failed to present sufficient evidence that appellant was aware of his control of the heroin for a sufficient period of time. Appellant suggests that the evidence indicates that he had only momentary or transitory possession of the heroin. To support this argument, appellant refers to *State v. Murphy*, 8th Dist. Cuyahoga No. 93093, 2010-Ohio-1422.

{¶45} In *Murphy*, the court determined that the defendant had only "momentary involuntary possession" of the item at issue-cocaine. *Id.* at ¶ 9. In that case, a police officer spotted a vehicle without a front license plate and recognized the driver as an individual the officer previously arrested for crack cocaine possession. After the officer activated his lights and sirens to signal to the driver to stop, the officer noticed "a lot of movement from the driver" and Murphy, the front-seat passenger. *Id.* at ¶ 2. The officer indicated that the driver appeared to pass an item to Murphy.

{¶46} Once the vehicle stopped, Murphy moved to the right side of the vehicle and exited the vehicle. The officer, however, ordered Murphy to return to the vehicle. When the officer asked Murphy to step out of the vehicle, the officer noticed two bags that contained an off-white substance located between the door frame and the passenger seat. Murphy told the officer that the substance was crack cocaine and the driver passed the drugs to Murphy. Murphy stated that the driver had advised Murphy that he (the driver) could not be caught with crack cocaine. Subsequently, Murphy was charged with drug trafficking and drug possession and convicted of drug possession.

{¶47} Murphy appealed and claimed that the state failed to present sufficient evidence to support his conviction. The appellate court agreed:

> The evidence was unrebutted that at the time of the stop, the driver of the vehicle attempted to pass the drugs off on Murphy, and that Murphy attempted to pass the drugs back to the driver. When he got out of the car, he told the arresting officer, "That m-----f----- put that on me." The drugs were found on the floor in the area between Murphy's seat and the door. The issue is simply whether Murphy's momentary involuntary possession when the drugs were forced on him by the driver was sufficient possession to constitute a violation of R.C. 2925.11(A). In *State v. Johnson* (Jan. 30, 1989), Clinton App. No. 88-02-002, the Twelfth District held in a per curiam opinion that evidence the defendant's possession of a firearm was "unwitting" or "involuntary" constituted a complete defense to a charge that the defendant "knowingly" possessed firearms. Likewise here, all of the evidence, including the testimony of the police officer, indicates that Murphy's possession was involuntary.

*Id.* at ¶ 9.

{¶48} After our review, we do not believe that the facts in *Murphy* bear similarity to the facts in the case at sub judice. In the case before us, no evidence exists that another individual forced heroin upon appellant or that appellant attempted to immediately dispossess himself of the heroin. Instead, the evidence shows that officers found appellant laying on top of the bag of heroin and that he was the only individual within the heroin's immediate vicinity. The evidence permits an inference that, if appellant was found laying on top of the bag

of heroin after Detective Wallace entered the motel room, then immediately before SWAT officers entered the room appellant had either actual or constructive possession of the heroin. *See State v. Lundy*, 8th Dist. Cuyahoga No. 71849, 1998 WL 338077, *6 (June 25, 1998), reversed on other grounds, 84 Ohio St.3d 279, 703 N.E.2d 773 (1999) (sufficient evidence defendant constructively possessed drugs when drugs "within arms length of [defendant] at the time the search warrant was executed").

{¶49} Appellant's suggestion that either the female, who also was present in the motel room, or one of the individuals who officers observed entering and exiting the motel room possessed the heroin may arguably be a plausible interpretation of the evidence. It is not, however, the only interpretation of the evidence. Moreover, appellant's theory does not negate the fact that the state presented sufficient evidence to show that appellant voluntarily possessed the heroin.

{¶50} Appellant further asserts that Detective Wallace's testimony does not "exclude the hypothesis that the bag of heroin was already on the floor before [appellant] complied with the SWAT officer's command, or that he lacked sufficient time to dispossess himself of the baggy." We first observe that appellant did not cite any authority that the state must exclude appellant's hypothesis that the plastic bag already was on the

floor before appellant complied with SWAT officers' command.
Moreover, appellant's claim that the bag of heroin already was
on the floor before he complied with the SWAT officers' command
is purely speculative. The evidence adduced at trial shows that
appellant was one of two adults present in the motel room at the
time Wallace found the bag of heroin underneath appellant's
body. Appellant's proximity to the heroin supports an inference
that he constructively possessed the heroin for a sufficient
length of time to have possession. Thus, the evidence supports
a finding that appellant voluntarily possessed the heroin. *See*
*State v. Holloman*, 8th Dist. Cuyahoga No. 95896, 2011-Ohio-4236,
¶ 22 (evidence supported finding that defendant voluntarily
possessed drugs found "underneath defendant's leg on the
passenger seat where he was sitting"). Moreover, any argument
that appellant landed on top of the bag of heroin by
happenstance would go to the weight of the evidence, not
sufficiency.

{¶51} Appellant also claims that the state needed to present
testimony from SWAT officers in the motel room before Detective
Wallace entered the room, or produce fingerprint or DNA evidence
to link appellant to the plastic bag to prove possession for a
sufficient time. Appellant, however, did not cite any authority
to require the state to present fingerprint or DNA evidence in

order to prove voluntary possession. Furthermore, the lack of such evidence goes to evidence weight rather than evidence sufficiency.

**{¶52}** Appellant also did not cite any authority to require the state to present testimony from a specific witness at the scene, like a SWAT officer, in order to prove voluntary possession. We therefore reject this argument.

**{¶53}** Consequently, based upon the foregoing reasons, we believe that the state presented sufficient evidence to show that appellant voluntarily possessed the heroin.[2]

---

[2] In *State v. Ireland*, 155 Ohio St.3d 287, 2018-Ohio-4494, 121 N.E.3d 285, ¶ 31, the Ohio Supreme Court stated:

> Voluntariness is not an essential element of the offense such that it must be charged in the indictment or addressed in the trial court's jury instructions, even if the need for the act to be voluntarily committed is stated in the statutory scheme; rather, a challenge to voluntariness is a defense.

*Id.* at ¶ 33.
The court further explained:

> [T]he state must prove that the defendant acted voluntarily when committing a criminal act, but proof of the actus reus and mens rea is necessarily also evidence that the defendant acted voluntarily. Thus, the requirement that the state prove that the defendant acted voluntarily is not an additional element or burden on the state.

*Id.*

D

**{¶54}** Appellant also argues that the state failed to present sufficient evidence to show that he possessed at least ten, but less than 50, grams of heroin. Appellant contends that the lab analyst's conclusion that the plastic bag contained 20.81 grams of heroin is faulty because she did not test multiple samples from the plastic bag, but instead, tested only one sample from the bag. Appellant thus asserts that the lab analyst's testimony supports, at most, a fifth-degree-felony heroin possession offense.

**{¶55}** R.C. 2925.11(C)(6) sets forth the penalties for heroin possession. The severity of the offense depends upon the amount of heroin possessed. The relevant parts of the statute provide:

> (a) Except as otherwise provided in division (C)(6)(b), (c), (d), (e), or (f) of this section, possession of heroin is a felony of the fifth degree, and division (B) of section 2929.13 of the Revised Code applies in determining whether to impose a prison term on the offender.
> * * * *
> (d) If the amount of the drug involved equals or exceeds one hundred unit doses but is less than five hundred unit doses or equals or exceeds ten grams but is less than fifty grams, possession of heroin is a felony of the second degree, and the court shall impose as a

---

We recognize, however, that a majority of the court did not concur in the principal opinion. One justice concurred, three justices concurred in judgment only, and two justices dissented. The precedential value of these statements, therefore, appears to be questionable.

mandatory prison term a second degree felony mandatory prison term.
* * * *

{¶56} To support his argument about the lab analyst's faulty testing method, appellant cites *State v. Carroll*, 2016-Ohio-374, 47 N.E.3d 198 (4th Dist.). In *Carroll*, we noted that other state courts have concluded that "'"random testing is permissible when the seized samples are sufficiently homogenous so that one may infer beyond a reasonable doubt that the untested samples contain the same substance as those that are conclusively tested."'" *Id.*, quoting *State v. Garnett*, 9th Dist. Medina No. 12CA0088-M, 2013-Ohio-4971, ¶ 13 (Belfance, J. concurring), quoting *People v. Jones*, 174 Ill.2d 427, 429, 221 Ill.Dec. 192, 675 N.E.2d 99 (1996); *see also* Annotation, Sufficiency of Random Sampling of Drug or Contraband to Establish Jurisdictional Amount Required for Conviction, 45 A.L.R.5th 1, Section 2[a] (1997) ("As a general rule, courts agree that random sampling of a homogenous substance is sufficient to establish the jurisdictional amount required by conviction").

{¶57} Appellant, however, contends that our statement in *Carroll* means that more than one sample must be tested when a single plastic bag contains a homogenous substance. We do not agree. In *Carroll*, officers discovered a pill bottle that

contained 56 plastic bags of cocaine that weighed approximately 21 grams. The state's expert testified that he used "the statistical method of hypergeometric sampling to determine how many units to test from the multi-unit sample." *Id.* at ¶ 12. The expert explained that based on this method, he tested the substance contained in 21 of the 56 plastic bags and all tested positive for cocaine. The expert stated that, based upon the hypergeometric sampling method, "he had a 95% confidence level that at least 90% of the units in the 56-unit sample were cocaine was sufficient to establish that the 21.31 grams of off-white substance in the baggies was cocaine." *Id.* at ¶ 34. After his conviction, the defendant appealed.

{¶58} On appeal, the defendant asserted, in part, that the state failed to present sufficient evidence that he possessed an amount of cocaine needed to support a second-degree-felony conviction. The defendant claimed that the expert's hypergeometric sampling method did not adequately demonstrate that he possessed approximately 21 grams of cocaine and argued that "the state must test every unit in every drug case to render an appropriate conclusion regarding the weight of the controlled substance." *Id.* at ¶ 31.

{¶59} We did not agree with the defendant's argument:

Appellate courts that have addressed this issue have accepted the hypergeometric or random sampling method of testing and determined that evidence of this method is sufficient as a matter of law to support a determination that the entire substance recovered together and similarly packaged is the same controlled substance as that tested.

*Id.* at ¶ 32, citing *State v. Gartrell*, 2014-Ohio-5203, 24 N.E.3d 680, ¶ 96 (3rd Dist.); *State v. Edwards*, 10th Dist. Franklin No. 12AP-992, 2013-Ohio-4342, ¶ 40; *State v. Mitchell*, 8th Dist. Cuyahoga No. 93076, 2010-Ohio-520, ¶ 12.

{¶60} We further noted that the defendant "did not present the testimony of any expert witness to attack the testimony or methods used by the state's expert whose qualifications he had stipulated." *Id.* at ¶ 34. We therefore concluded that the expert's testimony constituted sufficient evidence to support a finding that the defendant possessed approximately 21 grams of heroin.

{¶61} In the case at bar, we do not believe that *Carroll* supports appellant's position that the lab analyst's testimony that she tested only one sample from the bag that contained a homogenous substance is insufficient to establish that appellant possessed an amount of heroin that equaled or exceeded ten grams and less than 50 grams. Instead, as other Ohio appellate courts have recognized, "the random-sampling method of testing creates a reasonable inference that all similar contraband contains the

same controlled substance as that tested, at least when the contraband is recovered together and similarly packaged." *State v. Samatar*, 152 Ohio App.3d 311, 2003-Ohio-1639, 787 N.E.2d 691, ¶ 81 (10th Dist.). "Accordingly, evidence of the random-sampling method is sufficient as a matter of law to support a determination that the entire substance recovered together and similarly packaged is the same controlled substance as that tested." *Id.* (citations omitted); *accord State v. Mitchell*, 8th Dist. Cuyahoga No. 93076, 2010-Ohio-520, ¶ 11-12 (testing one rock sufficient to establish entire substance is crack cocaine when similar in appearance and packaged together in one bag); *State v. Smith*, 10th Dist. Franklin No. 97APA05-660, *2 (Dec. 23, 1997) (rejecting defendant's argument that testing small portion of substance in bag insufficient to establish that entire contents of bag contained cocaine).

{¶62} Moreover, courts have refused to "set requirements on the percentage of a substance that must be analyzed to support such an inference, as it depends on the facts and circumstances of each case." *State v. Garnett*, 9th Dist. Medina No. 12CA0088-M, 2013-Ohio-4971, ¶ 7. Furthermore, judges are generally "'woefully ignorant of sampling techniques.'" *Id.*, quoting *State v. Reynolds*, 4th Dist. Ross No. 1185, 1985 WL 8354, *2 (Sept. 26, 1985) (Grey, J., concurring). Thus, "if [an]

appellant wishes to object to the evidence on the grounds that it is not random or representative, it is incumbent upon him to introduce by expert witness or otherwise sufficient evidence to show the unreliability of the testing." *Reynolds* at *2 (Grey, J., concurring).

{¶63} For similar reasons, we reject appellant's contention that the lab analyst's testimony in the case sub judice is not sufficient to establish that he possessed at least 10, and not more than 50, grams of heroin. The analyst stated that she tested one sample from a single plastic bag that contained a homogenous substance and this sample tested positive for heroin. Her testimony thus constitutes sufficient evidence that the entire substance, recovered together in the same plastic bag, is the same controlled substance as that tested. We additionally note that appellant did not present any evidence to attempt to show that the lab analyst's testing methodology was unreliable.

{¶64} Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.

II

{¶65} In his second assignment of error, appellant asserts that the trial court violated his due process rights by failing to ensure that the verdict form specified the degree of the

offense, or the amount of heroin necessary, to elevate the offense to a second-degree felony. Appellant thus alleges that the guilty verdict constitutes a finding of guilty of the least degree of the offense, i.e., a fifth-degree felony.

{¶66} We first note that appellant did not argue during the trial court proceedings that the verdict form failed to comply with R.C. 2945.75(A)(2). This court previously has indicated, however, that reviewing courts may recognize "'error, even in the absence of an objection at trial, when a verdict form fails to comply with R.C. 2945.72(A)(2).'" *State v. Robinson*, 2019-Ohio-2155, 137 N.E.3d 501, ¶ 18 (4th Dist.), quoting *Portsmouth v. Wrage*, 4th Dist. Scioto No. 08CA3237, 2009-Ohio-3390, ¶ 42, citing *State v. Pelfrey*, 112 Ohio St.3d 422, 2007-Ohio-256, 860 N.E.2d 735; *accord State v. McDonald*, 137 Ohio St.3d 517, 2013-Ohio-5042, 1 N.E.3d 374, ¶ 17 ("[t]he express requirement of [R.C. 2945.75(A)(2)] cannot be fulfilled * * * by showing that the defendant failed to raise the issue of the inadequacy of the verdict form").

{¶67} R.C. 2945.75(A)(2) provides:

> When the presence of one or more additional elements makes an offense one of more serious degree:
> * * * *
> A guilty verdict shall state either the degree of the offense of which the offender is found guilty, or that such additional element or elements are present.

> Otherwise, a guilty verdict constitutes a finding of guilty of the least degree of the offense charged.

{¶68} Accordingly, "[p]ursuant to the clear language of R.C. 2945.75, a verdict form signed by a jury must include either the degree of the offense of which the defendant is convicted or a statement that an aggravating element has been found to justify convicting a defendant of a greater degree of a criminal offense." *Pelfrey* at syllabus; *accord McDonald* at ¶ 13. "*Pelfrey* makes clear that in cases involving offenses for which the addition of an element or elements can elevate the offense to a more serious degree, the verdict form itself is the only relevant thing to consider in determining whether the dictates of R.C. 2945.75 have been followed." *McDonald* at ¶ 17.

{¶69} In the case before us, appellant asserts the verdict form fails to include either the degree of the offense or the elements necessary to elevate heroin possession to a second-degree felony. Although appellant recognizes the caption of the verdict form lists the degree of the offense as a second-degree felony, he argues that listing the degree of the offense in the verdict-form caption does not satisfy the R.C. 2945.75(A)(2) requirement that a guilty verdict state "the degree of the offense of which the offender is found guilty." Appellant suggests that because the caption of a verdict form is not the

same as "[a] guilty verdict," he contends that the verdict form supports only a conviction for a fifth-degree-felony heroin possession.

{¶70} To support his argument, appellant relies upon *State v. Breaston*, 83 Ohio App.3d 410, 413, 614 N.E.2d 1156 (10th Dist.1993). In *Breaston*, "the verdict portion of the verdict form signed by the jury" did not include either "the degree of the offense" or any elements necessary to elevate the offense to a greater degree. *Id.* The caption of the verdict form, however, contained an abbreviation that read "(F-3)." *Id.* The *Breaston* court concluded, without explanation, that this abbreviation did not comply with the requirement in R.C. 2945.75(A)(2) that the guilty verdict state the degree of the offense.

{¶71} The state counters that listing the degree of the offense in the caption of the verdict form complies with R.C. 2945.75(A)(2) as construed in *McDonald* and *Pelfrey*. The state points out that in both cases, the Ohio Supreme Court indicated that courts are to consider the "verdict form" and did not limit a court's review to the language used in the jury's recitation of the verdict. The state further asserts that *Breaston* is distinguishable from the case at bar because the *Breaston*

verdict form did not contain any explanation to indicate to the jury that "(F-3)" was the degree of the offense at issue.

{¶72} After our review, we agree with the state's position. *McDonald* and *Pelfrey* provide that courts must consider the "verdict form," not simply the "guilty verdict," when reviewing whether a guilty verdict complies with R.C. 2945.75(A)(2).[3] Here, the verdict form lists the degree of the offense within the caption. Therefore, in accordance with *McDonald* and *Pelfrey*, we believe that the verdict form complies with R.C. 2945.75(A)(2).

{¶73} Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error.

III

{¶74} In his third assignment of error, appellant asserts that the trial court erred by allowing the state to introduce certain evidence. Appellant first contends that the trial court erred by allowing the state to introduce evidence that officers discovered a large amount of cash on appellant's person and that

---

[3] It is unclear whether *McDonald* and *Pelfrey* intended to deviate from the precise language used in R.C. 2945.75(A)(2), i.e., "guilty verdict." Nevertheless, both cases clearly state that courts are to review the "verdict form" and not merely the "guilty verdict."

they found scales in the motel room. Appellant asserts that this evidence violated Evid.R. 403(A) by permitting the state to paint appellant as drug dealer.

**{¶75}** Next, appellant claims that the trial court erred by allowing the state to question Detective Wallace about the basis for obtaining a warrant to search the motel room. Appellant alleges that this evidence violated the Confrontation Clause and the hearsay rule.

A

**{¶76}** In general, "'[t]he admission or exclusion of relevant evidence rests within the sound discretion of the trial court.'" *State v. Dean*, 146 Ohio St.3d 106, 2015-Ohio-4347, 54 N.E.3d 80, ¶ 91, quoting *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987), paragraph two of the syllabus. Consequently, "a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that created material prejudice." *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 14, quoting *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, ¶ 66; *accord State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 198, citing *State v. Sage*, 31 Ohio St.3d 173, 182, 510 N.E.2d 343 (1987). "An abuse of discretion is more than a mere error of law or judgment." *State v. Thompson*, 141 Ohio St.3d 254, 2014-

Ohio-4751, 23 N.E.3d 1096, ¶ 91; *accord State v. Johnson*, 144
Ohio St.3d 518, 2015-Ohio-4903, 45 N.E.3d 208, ¶ 75.  Instead,
"'[a] trial court abuses its discretion when it makes a decision
that is unreasonable, unconscionable, or arbitrary.'"  *State v.
Keenan*, 143 Ohio St.3d 397, 2015-Ohio-2484, 38 N.E.3d 870, ¶ 7,
quoting *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986
N.E.2d 971, ¶ 34.  An abuse of discretion includes a situation
in which a trial court did not engage in a "'sound reasoning
process.'" *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407,
972 N.E.2d 528, ¶ 14, quoting *AAAA Ents., Inc. v. River Place
Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553
N.E.2d 597 (1990).  Moreover, "[a]buse of discretion review is
deferential and does not permit an appellate court to simply
substitute its judgment for that of the trial court."  *Darmond*
at ¶ 34.

B

{¶77}  As a general rule, all relevant evidence is
admissible. Evid.R. 402.  Evid.R. 401 defines relevant evidence
as "evidence having any tendency to make the existence of any
fact that is of consequence to the determination of the action
more probable or less probable than it would be without the
evidence."  Evid.R. 401 and Evid.R. 402.  A trial court must,
however, exclude relevant evidence "if its probative value is

substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 403. A trial court has broad discretion to determine whether to exclude evidence under Evid.R. 403(A), and "'an appellate court should not interfere absent a clear abuse of that discretion.'" *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 40.

{¶78} Evid.R. 403(A) "manifests a definite bias in favor of the admission of relevant evidence, as the dangers associated with the potentially inflammatory nature of the evidence must substantially outweigh its probative value before the court should reject its admission." *State v. White*, 4th Dist. Scioto No. 03CA2926, 2004-Ohio-6005, ¶ 50. Thus, "[w]hen determining whether the relevance of evidence is outweighed by its prejudicial effects, the evidence is viewed in a light most favorable to the proponent, maximizing its probative value and minimizing any prejudicial effect to the party opposing admission." *State v. Lakes*, 2nd Dist. Montgomery No. 21490, 2007-Ohio-325, ¶ 22.

{¶79} We also recognize that, to some degree, all relevant evidence may be prejudicial in the sense that it "tends to disprove a party's rendition of the facts" and, thus, "necessarily harms that party's case." *State v. Crotts*, 104

Ohio St.3d 432, 2004-Ohio-6550, 820 N.E.2d 302, ¶ 23. Evid.R. 403(A) does not, however, "attempt to bar all prejudicial evidence." *Id.* Instead, the rules provide that only unfairly prejudicial evidence is excludable. *Id.* "'Evid.R. 403(A) speaks in terms of unfair prejudice. Logically, all evidence presented by a prosecutor is prejudicial, but not all evidence unfairly prejudices a defendant. It is only the latter that Evid.R. 403 prohibits.'" *State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, 819 N.E.2d 215, ¶ 107, quoting *State v. Wright*, 48 Ohio St.3d 5, 8, 548 N.E.2d 923 (1990).

{¶80} "'Unfair prejudice' does "not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest decision on an improper basis."'" *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 89, quoting *United States v. Bonds*, 12 F.3d 540 (6th Cir. 1993). Unfairly prejudicial evidence is evidence that "might result in an improper basis for a jury decision." *Oberlin v. Akron Gen. Med. Ctr.*, 91 Ohio St.3d 169, 172, 743 N.E.2d 890 (2001), quoting Weissenberger's Ohio Evidence (2000) 85-87, Section 403.3. It is evidence that arouses the jury's emotions, that "'evokes a sense of horror,'" or that "'appeals to an instinct to punish.'" *Id.* "'Usually, although not always, unfairly prejudicial

evidence appeals to the jury's emotions rather than intellect.'" *Id.* Thus, "[u]nfavorable evidence is not equivalent to unfairly prejudicial evidence." *State v. Bowman*, 144 Ohio App.3d 179, 185, 759 N.E.2d 856 (12th Dist.2001).

{¶81} In the case sub judice, appellant argues that the state's testimony that officers found a large sum of money on appellant's person unfairly prejudiced appellant. He also contends that the admission of the digital scales into evidence was unfairly prejudicial. Appellant claims that this evidence allowed the state to create an improper impression that appellant is a drug dealer.

{¶82} To support his argument, appellant cites *State v. Pollard*, 11th Dist. Ashtabula No. 99-A-0072, 2001 WL 369684 (Apr. 13, 2001). In *Pollard*, a jury convicted the defendant of cocaine possession. The defendant appealed and asserted that the trial court erred by permitting the state to introduce into evidence $66 in cash and a pager. The defendant argued that the state used the evidence in an "attempt[] to create an improper bias in the minds of the jurors that he was a drug dealer despite the fact that he was only charged with possession of a controlled substance." *Id.* at *2. The defendant thus claimed that the evidence "was substantially and unfairly prejudicial,

confusing and misleading, such that it was subject to the mandatory exclusion pursuant to Evid.R. 403(A)." *Id.*

{¶83} The appellate court agreed with the defendant and explained:

> [The defendant] was not charged with drug trafficking. If he had been, then the possession of currency in small denominations and a pager would be admissible to show that it was more probable than not that appellant was a drug trafficker. Here, the state attempted to use these items to create an obvious inference that if appellant was a drug dealer equipped to do business, then it was probable he had possession of the drugs.

*Id.* at *3.

The court additionally noted that, during closing arguments, the state used the evidence "in a highly improper manner." *Id.* at *5. Specifically, during closing arguments the state "implied that [the defendant] was really an uncharged drug dealer because he had a pager and currency; ergo, it was more likely than not that he was the one who dropped, tossed, or possessed the drugs." *Id.* The appellate court concluded that admitting the evidence and permitting the state to use the evidence in an improper manner during closing arguments constituted prejudicial error. Consequently, the court reversed the defendant's conviction.

{¶84} We, however, do not believe that the *Pollard* court's reasoning applies to the facts in the case at bar. In the case

before us, the state did not argue during closing arguments that appellant is an uncharged drug dealer because he possessed a large amount of money and digital scales. Furthermore, the state did not ask Officer King what he found on appellant's person in an attempt to create an improper inference that appellant is a drug trafficker and he was, therefore, more likely to possess drugs. Instead, the state asked Officer King what he found on appellant's person to show the only item found on appellant's person was a large amount of cash. As the state asserts in its brief, Officer King's testimony "was relevant and not prejudicial in the context of what was not found in the room or on the person – a motel key, wallet, or identification." The state contends that the lack of items found on appellant's person helped to show that appellant may have attempted to conceal his identity and implies guilty knowledge.

{¶85} We also note that several courts have indicated that "the presence of large amounts of cash on [a defendant's] person" helps to establish that a defendant knowingly possessed drugs. *State v. Jones*, 6th Dist. Erie No. E-19-065, 2021-Ohio-2621, ¶ 81; *State v. Watts*, 3rd Dist. Hancock No. 5-12-34, 2016-Ohio-257, ¶ 49 ("Another factor indicating constructive possession of drugs includes large amounts of cash found on a person."); *State v. Howard*, 5th Dist. Richland No. 13CA24, 2013-

Ohio-5691, ¶ 38 ("a large amount of cash" discovered on defendant's person relevant to establish constructive possession); *State v. Brooks*, 3rd Dist. Hancock No. 5-11-11, 2012-Ohio-5235, ¶ 50 ("pictures of [defendant] holding large amounts of cash" helped establish constructive possession); *State v. New*, 4th Dist. Gallia No. 08CA9, 2009-Ohio-2632, ¶ 19 (photographs of defendant and boyfriend holding large sums of cash relevant to establish constructive possession of drugs); *State v. Campbell*, 5th Dist. Stark No. 2004CA00176, 2005-Ohio-795, ¶ 29 (possession of a digital scale and large amount of cash relevant to establish constructive possession of a weapon); *State v. Riley*, 9th Dist. Summit No. 21852, 2004-Ohio-4880, ¶ 19 ("possession of a large amount of cash" circumstantial evidence of constructive possession); *State v. Gibson*, 8th Dist. Cuyahoga No. 82087, 2003-Ohio-5839, ¶ 13 (same).

{¶86} Moreover, we do not believe that the state introduced the digital scales into evidence in an attempt to paint appellant as a drug trafficker. We first observe that appellant did not object when the state's witnesses testified that officers discovered the digital scales in the motel room's night stand drawer. Instead, appellant objected when the state sought to introduce the scales into evidence at the close of the state's case. Therefore, we question whether appellant properly

preserved the issue for appellate review, or whether introducing the scales into evidence was cumulative to the testimony already given during the state's case-in-chief.

**{¶87}** Nevertheless, we do not believe that introducing the scales into evidence was unfairly prejudicial to appellant. The digital scales helped to establish that appellant constructively possessed the heroin discovered in the motel room. *See generally State v. Hall*, 8th Dist. Cuyahoga No. 91786, 2009-Ohio-3287, ¶ 22 (digital scales relevant to establish constructive possession of drugs located in residence). Thus, even if the evidence was prejudicial, we do not believe that it was unfairly prejudicial such that the trial court should have prevented the state from introducing it into evidence.

C

**{¶88}** Appellant next argues that Detective Wallace's testimony regarding the investigatory methods he used to procure the warrant to search the motel room violated his right to confront witnesses against him and the rule against hearsay. Appellant contends that the testimony implied that unidentified third parties had informed law enforcement officers that appellant had been selling drugs from the motel room.

{¶89} Appellate courts review alleged violations of a criminal defendant's confrontation rights under a de novo standard. *State v. Hedges*, 4th Dist. Hocking No. 15CA21, 2016-Ohio-5038, ¶ 12; *State v. Thompson*, 4th Dist. Washington No. 13CA41, 2014-Ohio-4665, ¶ 11, citing *State v. Smith*, 162 Ohio App.3d 208, 2005-Ohio-3579, 832 N.E.2d 1286 (8th Dist.), and *United States v. Robinson*, (C.A.6, 2004), 389 F.3d 582, 592. In the case at bar, however, appellant did not raise a Confrontation Clause objection during the trial court proceeding. Appellant thus raises the Confrontation Clause issue for the first time on appeal.

{¶90} Generally, a defendant who fails to raise a Confrontation Clause issue during the trial court proceedings forfeits the right to present it for the first time on appeal. *State v. Arnold*, 147 Ohio St.3d 138, 2016-Ohio-1595, 62 N.E.3d 153, ¶ 65; *State v. Louis*, 2016-Ohio-7596, 73 N.E.3d 917 (4th Dist.), ¶ 46; *State v. Smith*, 2016-Ohio-5062, 70 N.E.3d 150 (4th Dist.), ¶ 74; *see State v. Anderson*, 151 Ohio St.3d 212, 2017-Ohio-5656, 87 N.E.3d 1203, ¶ 44. Additionally, an "'[o]bjection on one ground does not preserve other, unmentioned grounds.'" *State v. Hairston*, 2016-Ohio-8495, 79 N.E.3d 1193, ¶ 34 (10th Dist.), quoting *State v. Wallace*, 10th Dist. Franklin No. 08AP-2, 2008-Ohio-5260, ¶ 25. Thus, objecting to testimony on the

basis of hearsay or relevancy generally does not preserve a Confrontation Clause issue. *State v. Sibole*, 2nd Dist. Clark No. 2017-CA-68, 2018-Ohio-3203, ¶ 9; *Hairston* at ¶ 34; *State v. Harris*, 1st Dist. Hamilton No. C-130442, 2014-Ohio-4237, ¶ 14. Consequently, because here appellant did not specifically object at trial to the alleged hearsay statements on the basis that they constituted hearsay and violated his rights under the Confrontation Clause, it can be argued that we may review the claimed violation only for plain error. *State v. Parsons*, 9th Dist. Lorain No. 18CA011328, 2019-Ohio-5021, ¶ 6 (defendant forfeited all but plain error with respect to Confrontation Clause issue when defendant "objected to a portion of [the] testimony on the basis that it called for a legal conclusion from the witness," but "he did not object to any of it on hearsay grounds").

{¶91} Crim.R. 52(B) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B) thus permits a court to recognize plain error if the party claiming error establishes (1) that "'an error, i.e., a deviation from a legal rule'" occurred, (2) that the error is a plain or "'an "obvious" defect in the trial proceedings,'" and (3) that this obvious error affected substantial rights, i.e., the error

"'must have affected the outcome of the trial.'" *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22, quoting *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002); *accord United States v. Dominguez Benitez*, 542 U.S. 74, 76, 82, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004) (under plain-error review, defendant typically must establish "'reasonable probability that, but for the error,' the outcome of the proceeding would have been different"). For an error to be "plain" or "obvious," the error must be plain "under current law" "at the time of appellate consideration." *Johnson v. United States*, 520 U.S. 461, 467, 468, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997); *accord Henderson v. United States*, 568 U.S. 266, 279, 133 S.Ct. 1121, 185 L.Ed.2d 85 (2013); *Barnes*, 94 Ohio St.3d at 27, citing *United States v. Olano*, 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (for error to be plain, it must be obvious error under current law); *State v. G.C.*, 10th Dist. Franklin No. 15AP-536, 2016-Ohio-717, ¶ 14. However, even when a defendant demonstrates that a plain error or defect affected his substantial rights, the Ohio Supreme Court has "'admonish[ed] courts to notice plain error "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."'" *Rogers* at ¶ 23, quoting *Barnes*, 94 Ohio St.3d at 27, quoting *State v. Long*, 53 Ohio

St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶92} In the case sub judice, as we explain below, we do not believe that the trial court erred by allowing the detective to explain his investigatory methods. The plain error doctrine, therefore, does not apply.

1

{¶93} The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." In *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the United States Supreme Court held that the Confrontation Clause guarantees a defendant's right to confront those "who 'bear testimony'" against him. *Id.* at 51. A testimonial out-of-court statement of a witness who does not appear at trial thus is inadmissible unless the witness is unavailable and the defendant had a prior opportunity for cross-examination. *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 309, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009), citing *Crawford*, 541 U.S. at 54. However, "[t]he Clause * * * does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Crawford*, 541 U.S. at 59, fn.9, citing *Tennessee v. Street*, 471 U.S. 409, 414,

105 S.Ct. 2078, 85 L.Ed.2d 425 (1985). Therefore, "[i]f testimony qualifies as nonhearsay, it does not implicate the Confrontation Clause." *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 186. Consequently, a necessary question when evaluating an alleged Confrontation Clause violation is whether the out-of-court statement constitutes hearsay or nonhearsay.

{¶94} In the case sub judice, we must initially determine whether the challenged testimony contains any out-of-court statements that are hearsay. If the challenged testimony contains nonhearsay, then we need not consider whether they also are testimonial and, thus, barred under the Confrontation Clause.

2

{¶95} Under Evid.R. 801(C), hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." "A 'statement' is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion." Evid.R. 801(A). If a statement is offered for a purpose other than proving the truth of the matter asserted, it is not hearsay and is admissible. *State v. Osie*, 140 Ohio St.3d 131, 2014-Ohio-2966, 16 N.E.3d 588, ¶ 118.

{¶96} Out-of-court statements that explain law enforcement officers' next investigatory steps are not generally hearsay. *State v. Beasley*, 153 Ohio St.3d 497, 2018-Ohio-493, 108 N.E.3d 493, ¶ 172. Thus, "[l]aw-enforcement officers may testify to out-of-court statements for the nonhearsay purpose of explaining the next investigatory step." *Id.*, citing *McKelton* at ¶ 186. Admissibility of investigatory-step statements is limited, however, due to "'the great potential for abuse and potential confusion to the trial of fact.'" *State v. Ricks*, 136 Ohio St.3d 356, 2013-Ohio-3712, 995 N.E.2d 1181, ¶ 24, quoting *State v. Humphrey*, 10th Dist. Franklin No. 07AP-837, 2008-Ohio-6302, ¶ 11. In order to prevent abuse and limit potential confusion, "[t]estimony offered to explain police conduct is admissible as nonhearsay only if it satisfies three criteria: (1) 'the conduct to be explained [is] relevant, equivocal, and contemporaneous with the statements,' (2) the probative value of the statements is not substantially outweighed by the danger of unfair prejudice, and (3) 'the statements do not connect the accused with the crime charged.'" *McKelton* at ¶ 186, quoting *Ricks* at ¶ 27. Consequently, an investigatory-step statement "is not permitted if the statement in question 'connect[s] the accused with the crime charged.'" *State v. Clinton*, 153 Ohio St.3d 422, 2017-Ohio-9423, 108 N.E.3d 1, ¶ 136, quoting *Ricks* at ¶ 27.

**{¶97}** In the case at bar, we do not agree with appellant that Detective Wallace's testimony explaining his investigatory methods contained inadmissible hearsay. None of the detective's testimony contained out-of-court statements that related what another individual had stated. Moreover, none of the statements were offered in evidence to prove the truth of the matter asserted. Instead, Wallace described his investigatory methods to explain what led officers to search the motel room. Thus, the trial court did not err by allowing the testimony.

**{¶98}** Accordingly, based upon the foregoing reasons, we overrule appellant's third assignment of error.

IV

**{¶99}** In his fourth assignment of error, appellant contends that trial counsel rendered ineffective assistance of counsel by failing to request a jury instruction regarding "the temporal requirement to prove voluntary possession" or to object to its omission.

**{¶100}** The Sixth Amendment to the United States Constitution, and Article I, Section 10 of the Ohio Constitution, provide that defendants in all criminal proceedings shall have the assistance of counsel for their defense. The United States Supreme Court has generally interpreted this provision to mean a criminal

defendant is entitled to the "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *accord Hinton v. Alabama*, 571 U.S. 263, 272, 134 S.Ct. 1081, 188 L.Ed.2d 1 (2014) (Sixth Amendment right to counsel means "that defendants are entitled to be represented by an attorney who meets at least a minimal standard of competence").

{¶101} To establish constitutionally ineffective assistance of counsel, a defendant must show that (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced the defense and deprived the defendant of a fair trial. *E.g., Strickland*, 466 U.S. at 687; *State v. Myers*, 154 Ohio St.3d 405, 2018-Ohio-1903, 114 N.E.3d 1138, ¶ 183; *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 85. "Failure to establish either element is fatal to the claim." *State v. Jones*, 4th Dist. Scioto No. 06CA3116, 2008-Ohio-968, ¶ 14. Therefore, if one element is dispositive, a court need not analyze both. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000) (a defendant's failure to satisfy one of the ineffective assistance of counsel elements "negates a court's need to consider the other").

{¶102} The deficient performance part of an ineffectiveness claim "is necessarily linked to the practice and expectations of

the legal community: 'The proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" *Padilla v. Kentucky*, 559 U.S. 356, 366, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010), quoting *Strickland*, 466 U.S. at 688; *accord Hinton*, 571 U.S. at 273. Prevailing professional norms dictate that "a lawyer must have 'full authority to manage the conduct of the trial.'" *State v. Pasqualone*, 121 Ohio St.3d 186, 2009-Ohio-315, 903 N.E.2d 270, ¶ 24, quoting *Taylor v. Illinois*, 484 U.S. 400, 418, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988).

{¶103} Furthermore, "'[i]n any case presenting an ineffectiveness claim, "the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances."'" *Hinton*, 571 U.S. at 273, quoting *Strickland*, 466 U.S. at 688. Accordingly, "[i]n order to show deficient performance, the defendant must prove that counsel's performance fell below an objective level of reasonable representation." *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 95 (citations omitted).

{¶104} Moreover, when considering whether trial counsel's representation amounts to deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."

*Strickland*, 466 U.S. at 689.  Thus, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."  *Id.* Additionally, "[a] properly licensed attorney is presumed to execute his duties in an ethical and competent manner."  *State v. Taylor*, 4th Dist. Washington No. 07CA11, 2008-Ohio-482, ¶ 10, citing *State v. Smith*, 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985).  Therefore, a defendant bears the burden to show ineffectiveness by demonstrating that counsel's errors were "so serious" that counsel failed to function "as the 'counsel' guaranteed * * * by the Sixth Amendment."  *Strickland*, 466 U.S. at 687; *e.g., State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 62; *State v. Hamblin*, 37 Ohio St.3d 153, 156, 524 N.E.2d 476 (1988).

{¶105} To establish prejudice, a defendant must demonstrate that a reasonable probability exists that "'but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the outcome.'"  *Hinton*, 571 U.S. at 275, quoting *Strickland*, 466 U.S. at 694; *e.g., State v. Short*, 129 Ohio St.3d 360, 2011-Ohio-3641, 952 N.E.2d 1121, ¶ 113; *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph three of the syllabus; *accord State v. Spaulding*, 151 Ohio St.3d

378, 2016-Ohio-8126, 89 N.E.3d 554, ¶ 91 (prejudice component requires a "but for" analysis). "'[T]he question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'" *Hinton*, 571 U.S. at 275, quoting *Strickland*, 466 U.S. at 695.

{¶106} Furthermore, courts ordinarily may not simply presume the existence of prejudice but, instead, must require the defendant to affirmatively establish prejudice. *State v. Clark*, 4th Dist. Pike No. 02CA684, 2003-Ohio-1707, ¶ 22; *State v. Tucker*, 4th Dist. Ross No. 01CA2592 (Apr. 2, 2002. As we have repeatedly recognized, speculation is insufficient to establish the prejudice component of an ineffective assistance of counsel claim. *E.g., State v. Tabor*, 4th Dist. Jackson No. 16CA9, 2017-Ohio-8656, ¶ 34; *State v. Jenkins*, 4th Dist. Ross No. 13CA3413, 2014-Ohio-3123, ¶ 22; *State v. Simmons*, 4th Dist. Highland No. 13CA4, 2013-Ohio-2890, ¶ 25; *State v. Halley*, 4th Dist. Gallia No. 10CA13, 2012-Ohio-1625, ¶ 25; *State v. Leonard*, 4th Dist. Athens No. 08CA24, 2009-Ohio-6191, ¶ 68; *accord State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 86 (a purely speculative argument cannot serve as the basis for an ineffectiveness claim).

{¶107} Courts have held that "'[a]n attorney's decision not to request a particular jury instruction is a matter of trial

strategy and does not establish ineffective assistance of counsel.'" *State v. Harrison*, 3d Dist. Logan No. 8-14-16, 2015-Ohio-1419, ¶ 89, quoting *State v. Morris*, 9th Dist. Summit No. 22089, 2005-Ohio-1136, ¶ 100, citing *State v. Fisk*, 9th Dist. Summit No. 21196, 2003-Ohio-3149, ¶ 9, citing *State v. Hill*, 73 Ohio St.3d 433, 443 (1995), and citing *State v. Oates*, 3d Dist. Hardin No. 6-12-19, 2013-Ohio-2609, ¶ 9. Nevertheless, "[a] trial court's instructions to a jury must correctly, clearly, and completely state the law applicable to the case." *State v. Orians*, 179 Ohio App.3d 701, 2008-Ohio-6185, ¶ 10 (3d Dist.). Further, "a defendant is entitled to have the jury instructed on all elements that must be proved to establish the crime with which he is charged." *State v. Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, ¶ 37, quoting *State v. Adams*, 62 Ohio St.2d 151, 153 (1980).

{¶108} In the case at bar, even if we assume for purposes of argument that appellant's trial counsel performed deficiently by failing to ask the trial court to give the jury a voluntary-possession instruction, we do not believe that appellant has demonstrated that a reasonable probability exists that the jury would have had reasonable doubt regarding appellant's guilt if the court had given the voluntary-possession instruction. As we noted earlier in this decision, the evidence shows that officers

found appellant in a small motel room laying on top of a bag of heroin. None of the evidence shows that appellant momentarily possessed the heroin. The evidence adduced at trial allowed the jury to reasonably infer that, if appellant was found laying on top of the bag when Detective Wallace lifted appellant from the floor, then appellant was in proximity to the heroin for a sufficient length of time to have possession. Thus, trial counsel did not render ineffective assistance of counsel by failing to ask the court to give the jury a voluntary-possession instruction.

{¶109} We reiterate that in *Ireland*, supra, the Ohio Supreme Court stated: "Voluntariness is not an essential element of the offense such that it must be charged in the indictment or addressed in the trial court's jury instructions, even if the need for the act to be voluntarily committed is stated in the statutory scheme; rather, a challenge to voluntariness is a defense." *Id.* at ¶ 33. We recognize, however, that a majority of the court did not concur in the principal opinion. We nevertheless find the court's analysis instructive as it relates to trial counsel's decision in the case at bar not to request a voluntary-possession jury instruction.

{¶110} Consequently, we do not agree with appellant that trial counsel provided ineffective assistance of counsel by failing to request a voluntary-possession jury instruction.

{¶111} Accordingly, based upon the foregoing reasons, we overrule appellant's fourth assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

[Cite as *State v. Russell*, 2022-Ohio-1746.]

JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellee recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of 60 days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the 60 day period.

The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the 45 day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Wilkin, J.: Concur in Judgment & Opinion

For the Court

BY:_____

Peter B. Abele, Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.